# CHARLESTON.

## RATHBONE *v.* GAS Co.

Submitted June 19, 1888.—Decided Dec. 1, 1888.

1. CORPORATIONS—STOCKHOLDERS—PARTIES—DIRECTORS.

In order to entitle a stockholder to institute and maintain a suit in equity to redress a corporate injury committed *infra vires* against a solvent corporation in the full exercise of its franchises and carrying on its corporate business, it must appear not only that the directors are either disabled by their misconduct to sue, or that they have wrongfully refused to do so upon a proper demand; but where the matter will admit of the necessary delay, and it is practicable to call upon the stockholders to act, this must also be done. Until it is shown, that every reasonable effort to obtain redress through the regularly constituted agents and controlling power of the corporation has proved unavailing, a stockholder can not sue in his own name alone nor on behalf of himself and other stockholders. (pp. 804, 805.)

2. CORPORATIONS—INJUNCTION—PARTIES—RECEIVERS.

A case in which a bill was filed by three stockholders of a solvent corporation on behalf of themselves and the other stockholders to enjoin the officers of the corporation, and to appoint a receiver to take charge of its business—HELD—The bill did not aver such facts, as showed the plaintiffs were entitled to institute and maintain the suit.

*J. B. Jackson* and *J. A. Hutchinson* for appellants.

VAN WINKLE & AMBLER FOR APPELLEES :

I. A stockholder may sue to protect the corporation and to compel an account in West Virginia :

    (*a*) in any case, in which " sufficient cause is shown therefor," Code, ch. 53, sec. 58 ;

    (*b*) in any case, in " which there is danger of the loss or misappropriation of the corporate property or a material part thereof." Code, ch. 133, sec. 28.

This right is expressly conferred on a stockholder by the statute quoted. This statute is construed an enlargement of the general principles requiring a demand on directors, &c. *Crumlish* v. *Railroad Co.*, 28 W. Va. 634.

II. Apart from our statute, a demand and refusal to redress grievances being shown as to the directors, and two

thirds of the total stockholders being in league against the minority, gross abuses and misappropriations being established, these stockholders had right to ask a receiver and an account. *Crumlish* v. *Railroad Co.*, 28 W. Va. 628, 633; Angel & Ames on Corp., sec. 312; Morawetz, sec. 242–252; Cook on Stockh. 695; Pomeroy Eq. Juris. 1095; *Slattery* v. *S. L. Co.*, 91 Mo. 217. (60 Am. 245); *Brinkerhoff* v. *Bostwich*, 88 N. Y. 52; *Stevens* v. *Davison*, 18 Gratt. 819; Thompson on Directors 259; *Hodges* v. *Screw Co.*, 53 Am. Dec. 243; *Evans* v. *Coventry*, 5 DeG. M. & G. 911; Beach on Receivers 405.

III. A managing receiver was proper for a Gas Co., whose officers were unfaithful, and in whose light-supply the public was interested. *N. O. Gas Co.* v. *Light Co.*, 115 U. S. Rep. 669; *Boston* v. *Barbour*, 97 U. S. Rep. 146; Beach on Receivers 284.

IV. Obviously a stockholder can sue to protect his interest, while his corporation is solvent, because the stockholder's interest in an insolvent concern is nothing. Hence the plain statutes of West Va. have the common sense application clearly shown by the decisions of our own Court regarding companies solvent and on their legs. *Crumlish* v. *Railroad Co.*, 28 W. Va. 633; *Stevens* v. *Davisson*, 18 Gratt. 819.

V. Maxwell, guardian, having filed an affidavit protesting against this suit and being of counsel for the majority, no combination possible to these plaintiffs could effect a change. Where the corporation is thus powerless, equity will intervene. Authorities *supra*.

SNYDER, JUDGE :

Suit in equity instituted February 7, 1888, in the Circuit Court of Wood county by John V. Rathbone, Charles H. Turner and A. G. Clark suing on behalf of themselves and all other stockholders of the Parkersburg Gas Company, against said gas company, C. S. Despard, B. M. Despard, N. Goff and W. A. MacCosh.

The bill avers, that said gas company is a domestic corporation organized in 1865 for the purpose of supplying the city of Parkersburg and its inhabitants with gas; that it is

the owner of a valuable plant consisting of real estate and a system of pipes extending through the various portions of the city and other valuable property, representing an outlay of over $75,000.00 by the operation and use of which it has since 1865 manufactured and supplied said city and its inhabitants with gas, and is still doing so; that its capital stock is divided into 3,000 shares, of the par value of $50.00 each, of which the plaintiffs, Rathbone, Turner, and Clark, are the owners of 804 shares, and the defendants, C. S. Despard, B. M. Despard, Goff and MacCosh, 1,324 shares; that the other shares are owned by the following shareholders: D. H. Wallace, 100 shares, Gertrude Despard, 318 shares, E. Maxwell, as guardian and executor of the Despard estate, 236 shares; and D. M. Despard, 218 shares,—aggregating 872,—making the total of 3,000 shares; that the defendants, C. S. and B. M. Despard, are brothers, the defendant, Goff, a brother-in-law, and the said D. M. Despard is a near relative of said C. S. Despard; that the said Maxwell, and the defendants, B. M. Despard and Goff, reside at Clarksburg, 82 miles from Parkersburg, where the works and office of said gas company are situated, and have taken but a nominal and formal part in the affairs of the company; that at all the meetings of the stockholders of the company for the past ten years or more the stock held by said C. S. Despard and his said kinsmen, and by said Maxwell, has been controlled and substantially voted by C. S. Despard, who has had the actual and exclusive control of the company and its affairs by reason of his control of the majority of the stock as aforesaid; that the plaintiffs have time and again at the meetings of the stockholders protested against the administration and management of the affairs of the company and have used every means through complaints in the meetings of the stockholders and to the directors to secure an honest and just administration of the affairs of the corporation, and that all their efforts have been without avail; that the control has been in the hands of C. S. Despard, who has continued to have himself made president of the company at a salary of $1,500.00 per year, and has continually demonstrated his unfitness for the position by his reckless disregard of the rights and interests of the plaintiffs, and of the trusts assumed by

him; that at a meeting of the stockholders held in February, 1873, said C. S. Despard was made superintendent of the company, to keep its books and to attend to all its business, and that by reason of the control of its stock the said C. S. Despard has ever since contrived to retain the presidency and management of the affairs of the company; that for the past few years the directors of the company have been C. S. Despard, B. M. Despard, N. Goff, W. A. MacCosh, and the plaintiff John V. Rathbone; that the said Goff did not attend any of the meetings of the directors after January, 1882, until November 17, 1887, at which latter date the plaintiff Rathbone met the said Goff and Despard, and stated that the affairs of the company were mismanaged, its funds misappropriated, and the trusts assumed by said C. S. Despard abused by him, and demanded a change of the management of the business of the company, and the resignation of the said Despard as president, but the said directors not only refused to take any action in the matter, but since then there has been no meeting of the board of directors, and nothing has been done to adjust the affairs of the company; that said Maxwell has never attended a meeting of the stockholders, but as a rule he and the other stockholders under the influence of C. S. Despard have been represented by proxies, given to persons selected by said Despard, who voted the same in the interest and at the dictation of said C. S. Despard; that the plaintiffs have repeatedly demanded, and have always been unable to ascertain, and can not now lay before the court, a correct statement of the affairs of the company, but they charge that for years its books and accounts have been confused and inaccurate, that the finances have been badly mismanaged and incorrectly reported, improper entries have been made, and proper ones omitted, so that the plaintiffs are unable to ascertain the truth respecting the same; that at a meeting of the stockholders held in January, 1880, an attempt was made to have the books examined, and the affairs of the company investigated, by competent persons, but such investigation was prevented by those acting with said Despard, who had a committee, consisting of the plaintiffs Rathbone and Clark, and N. Goff and W. A. MacCosh, appointed to investigate the books, etc.;

that said Goff never met with said committee, the plaintiffs Rathbone and Clark and said MacCosh were known to be and were in fact inexpert and not qualified to investigate said books, *etc.*, and the stockholders, although applied to for the purpose, refused to authorize the committee to employ competent experts to assist the committee in such investigation, and that said committee was at the January meeting, 1882, discharged on the motion of the defendant Goff; that at meetings of the stockholders held in January and November, 1887, the said C. S. Despard submitted statements showing that there was at each of those times a large amount of money on hand over and above all the liabilities of the company, when in fact both of said statements were false, and there was no money in the treasury of the company, the same having been used by said Despard without authority; that at the January meeting of 1888 no statement was presented, and, upon inquiry as to what had become of the money representing the profits of the preceding twelve months, the said Despard replied that he did not know whether he owed the company or not, and could not tell until the books had been examined and corrected; that dividends had been declared to a large amount, which the said Despard neglected and refused to pay, he having used and misappropriated the funds provided for such payment; that he also devoted to his own use the money of the company which should have been applied to the payment of its debts, and thereby caused the company to be sued and harrassed; that said Despard used the coal of the company for his private purposes, and rendered no account of it; that by reason of the incompetency and bad management of the business of the company the said Despard has made gas of an inferior quality, and thereby lessened the patronage of the company and sacrificed its interests; that at said meeting of the stockholders in January, 1888, the stock of Goff and Maxwell was placed in the hands of L. W. Hughes as proxy; that those then present were the plaintiffs, the said Hughes, and C. S. Despard, B. M. Despard, and W. A. MacCosh; that the said Hughes being an officer of the company, it was ruled that he could not act as proxy, and thereupon a vote was taken for five directors, which resulted in

the election of the plaintiffs Rathbone and Turner and said
MacCosh as three directors, there being a tie vote as to the
other two directors, and when this result was announced the
said MacCosh and two Despards withdrew from the meeting,
and thus, by leaving less than half the stock represented,
broke up the meeting, and prevented the election of a full
board of directors; that Rathbone and Turner, two of the
directors so elected, attempted to confer with MacCosh, the
other director, but he refused to act with them, stating that
he was under such obligations to Goff and C. S. Despard that
he would do nothing contrary to their wishes; that within
the past few days a notice, signed by C. S. and B. M. Des-
pard, had been served on the plaintiffs, calling a meeting of
the stockholders for February 21, 1888, to elect five directors
for the company; that at said meeting in January, 1888, on
the motion of C. S. Despard, the plaintiff Clark and said
MacCosh were appointed a committee, with authority to
employ an expert to assist them, to go over the books, and
report as soon as possible, to a meeting of the stockholders
to be called by them, and that said committee did employ
an expert to assist, but found that it would be impracticable
to make a satisfactory report in any reasonable time, if it
can be done at all; and the plaintiffs assert that they are
entitled to have an investigation made by judicial authority.

The bill finally avers that, by reason of a collusion of a
majority of the stockholders with C. S. Despard, and the
neglect of the majority of the directors, the plaintiffs are
helpless, and have no way of protecting themselves against
the fraud and wrongs of which they complain, except by the
interposition of a court of equity; and therefore the plaintiffs
pray that the gas company, the said C. S. Despard, in his
own right and as president of said company, and each of the
other defendants, their agents, *etc.*, be enjoined from collect-
ing any money due the company, or in any manner interfer-
ing with its funds or affairs; that a receiver be appointed to
take charge of the property and assets of the company, col-
lect the money due to it, and administer its affairs, carry on
the business of the company, and take care of its property;
that said C. S. Despard be required to account for the property,
money, and other things belonging to the company; that an

account may be taken between the company and said Despard, and a decree rendered against him for any amount that may be found due from him to the company, and for general relief, *etc.*

The bill was answered by all the defendants except MacCosh, and the cause, having been set for hearing as to the plaintiffs' motion for an injunction and the appointment of a receiver, came on to be heard on March 8, 1888, by the Circuit Court, upon said motion, on the pleadings, which, being sworn to, were treated as affidavits, the depositions, and the several affidavits filed by the respective parties, and the argument of counsel; on consideration of all of which the court decided that the plaintiffs had made out a proper case for the intervention of a court of equity; and therefore it awarded the injunction prayed for in the bill, and appointed a receiver to take charge of all the property and estate of the gas company, and to operate and manage its works in the manner prescribed in said decree, until the further order of the court.

From this decree all the defendants, except W. A. MacCosh, obtained an appeal, with *supersedeas.*

I have stated fully all the material allegations of the bill, for the reason, that the important question presented for our determination is, whether or not the plaintiffs by their bill make a case which entitles them to relief in equity. It may be stated, as a general rule, that there is no wrong or fraud, which the directors or officers and agents of a corporation may commit, that can not be redressed by appropriate and adequate remedies. From the fiduciary relation, which the directors of a corporation hold to the corporation itself and to its shareholders and creditors, and from the fact, that they are held to strict good faith in the management of the corporate concerns, it follows, that they are liable either to the corporation, or in a proper case to the shareholders or creditors for a fraudulent breach of trust or misappropriation of corporate funds, whereby a loss or injury results to the corporate assets. *Brinckerhoff* v. *Bostwick*, 88 N. Y. 52; Ang. & A. Corp. § 314.

It may be stated, however, as a rule equally well established, that redress for a wrong against the corporation should

be obtained by the corporation itself through its regularly appointed agents; and it is only in case the corporation has been dissolved or disabled from proceeding on its own behalf by reason of the misconduct or disability of its agents, that the shareholders may themselves proceed in chancery for the protection of their equitable rights. 1 Mor. Priv. Corp. § 239; *Moore* v. *Schoppert*, 21 W. Va. 282, 291. Ordinarily, the directors of a corporation have complete power to control its action, and to decide whether it shall enter into litigation or not. The shareholder, therefore, can not obtain the interposition of the courts without showing, that the directors are either unwilling or unable to bring suit on behalf of the corporation. And, even where the directors or the ordinary managing officers are at fault, it does not necessarily follow, that the corporation is disabled from procuring justice for itself; for the majority of the shareholders in corporate meeting having supreme authority under the charter to manage the corporate affairs, whenever it is possible to obtain justice by calling a meeting of the shareholders and removing the offending officers and electing new ones, this remedy must be pursued. In such case a shareholder can not sue in equity, since the ground for relief fails, namely, that the corporation, his trustee, is unable to protect the trust. *Hawes* v. *Oakland*, 104 U. S. 450, 460.

The managing agents of an ordinary private corporation are invested with wide discretionary powers. It is often a matter involving the exercise of much judgment whether or not it is expedient in a given case, to begin litigation on account of an actionable injury. It is not always the duty of the managing agents of a corporation to go to law immediately, whenever a wrong has been done to the corporation. The advisability of suing for redress, and the time and manner of proceeding, are largely intrusted to their judgment; and it is their duty to give the corporation the benefit of their best judgment in this respect. The refusal of the agents to institute legal proceedings on behalf of the corporation, even when requested by its shareholders, may possibly be a judicious exercise of the discretion conferred upon them. This discretionary power confided to the agents can not be usurped by the shareholders, and therefore the courts will

not interfeɩe at the suit of a shareholder to redress an injury suffered by the corporation, merely because its managing agents have in good faith refused to begin a suit.

In order to entitle a shareholder to sue he must show, either, that the managing agents are themselves the authors of the wrong, or, that their refusal to bring suit in the name of the corporation is an act of bad faith, or an abuse of the discretionary power vested in them. Even this rule is subject to this qualification : The directors and agents of the corporation are inferior to and under the control of a majority of the shareholders. Consequently, when the directors refuse to discharge their duty, they may be removed or controlled by a majority of the shareholders. Thus, in order to confer upon a shareholder the right to sue, in a case in which the primary right is in the corporation, he must not only show, that the directors are in default or wrongfully refuse to sue, but he must show, that a majority of the shareholders have been appealed to, and, that they are also guilty of misconduct, or willfully and wrongfully refuse to act in the matter. 1 Mor. Priv. Corp. §§ 242–246 ; *Foss* v. *Harbottle*, 2 Hare 493 ; *Hodges* v. *Screw Co.*, 53 Amer. Dec. 624, note, 637 ; Cook Stocks, §§ 677, 678. In *Stevens* v. *Davison*, 18 Gratt. 819, the act complained of was done *ultra vires*, and had been repudiated by the stockholders in regular meeting, and the question of the right to institute that suit was not raised or considered by the court.

It was held by this Court in *Crumlish* v. *Railroad Co.*, 28 W. Va. 623 : "If it be made to appear in any manner, that the corporation can not safely be left to obtain relief through the action of its officers, equity will interfere at the suit of a stockholder, without proof of a demand upon the managing agents, and their wrongful refusal or neglect to proceed on its behalf." This rule, as applied to cases such as that then before the Court, is well sustained by the authorities. That was a case, in which the corporation had ceased to exist both in law and in fact, and there were neither directors nor stockholders willing to act in its behalf.

It is very evident, that there is a wide difference between that case and one in which the corporation is solvent, and is in the full exercise of its corporate franchises. The rule ac-

cording to reason and the authorities, as I understand them, when applied to solvent corporations engaged in carrying on their corporate business, is, that a stockholder will not be entitled to sue for the redress of a corporate injury done *infra vires* unless it is shown, not only, that the directors of the corporation are disabled by their misconduct to sue, or have wrongfully refused to do so upon a proper demand, but where the matter will admit of the necessary delay, and it is practicable to call upon the stockholders to act, this must be done also; and it must therefore appear, that he has exhausted every reasonable effort, without success, to obtain redress through the regularly constituted agents and controlling authorities of the corporation, before he will be entitled to come into equity, either alone or on behalf of himself and other stockholders. Applying this doctrine to the case at bar, it seems to me, that the plaintiffs have failed to show a right to institute this suit.

It is not alleged, that the corporation, the gas company, is either insolvent, or, that it has abandoned its corporate business. It is not pretended, that any of its officers or agents have done any act *ultra vires*, or violated any charter-rights. The burden of the complaint is, that C. S. Despard, the president and manager of the business of the company, has abused his trust, and, that a majority of the directors and stockholders are under his influence and refuse to remove him. This is simply a general charge.

The facts, by which it is attempted to prove, that a majority of the directors and stockholders are under the influence of and controlled by said Despard, are, that they are his near kinsmen; that some of them reside at a distance and permit him to select the proxy to vote their stock at the stockholders' meetings; that they refused to permit a committee, appointed to investigate the books of the company, to employ an expert to aid in such investigation; that at a meeting for the election of directors some of them withdrew and broke up the meeting, and thus prevented the election of a full board of directors; and, that they afterwards gave notice for a meeting to elect five directors, ignoring the fact, that three directors had been elected at the former meeting.

These facts, taken singly or all together, do not of themselves necessarily establish, that these directors and stockholders have acted either fraudulently or in willful disregard of their duties, or, that they have manifestly abused the discretionary power vested in them. But, even admitting they failed to properly exercise the powers conferred upon them, this would not entitle the plaintiffs, as stockholders, to institute this suit, unless it is further shown, that a majority of the board of directors or stockholders have by their misconduct disabled themselves to act, or, that they have been legally called upon to act, and refused to do so.

What we have already said is sufficient to show, that neither of these directors, nor any of the stockholders, except the said C. S. Despard, has done any such wrongful act in respect to the matters complained of in the bill, as would of itself disqualify or disable him or them to act; and there is no fact alleged or charged in the bill to show, that any director or stockholder, other than C. S. Despard, has done any wrongful act in respect to the property or management of the business affairs of the company.

In regard to calling upon the directors and stockholders to bring suit the bill contains the general charge, often repeated, that the plaintiffs have time and again protested to the directors and stockholders and sought by every means in their power to secure an honest and faithful administration of the affairs of the company without avail, and that they demanded an investigation of the books and accounts of the company and the removal of C. S. Despard as president and manager; but it is not even suggested anywhere in the bill, that the plaintiffs or either of them ever requested, much less demanded, that suit should be brought. It may be inferred, that the board of directors, as well as a majority of the stockholders, were informed of the complaints and dissatisfaction of the plaintiffs at the conduct of C. S. Despard in the management of the business of the company; but the only facts charged in the bill are, that on one occasion the plaintiff, Rathbone, in the presence of C. S. Despard and N. Goff, stated the facts set out in the bill in regard to the mismanagement of the affairs of the company by said Despard and the misappropriation of its funds, and demanded a

change of the management and the resignation of Despard; and that on another occasion two of the plaintiffs requested the defendant, MacCosh, to co-operate with them as directors of the company, and he refused to do so. But there is no fact charged in the bill, from which it can be inferred, that the stockholders, other than the plaintiffs and the directors of the company, had ever been informed or knew, that there was any misconduct on the part of O. S. Despard or mismanagement of the affairs of the company, or that any complaint had ever been made to them or demand for the removal of said Despard.

These stockholders, united with the plaintiffs, would represent a majority of the stock, and could therefore control the election of the directors and thus change the management of the company. Simply because stockholders were near relatives of O. S. Despard, resided at a distance, and permitted him to appoint proxies to vote their stock, would not, in the absence of any information that Despard was abusing his trust, and that the affairs of the company were being mismanaged, warrant a court of equity in assuming that they, if informed of the facts and requested to act, would refuse to aid in the removal of Despard, in compelling him to account to the company, and, if necessary, authorize suit against him. It was entirely practicable to inform these absent stockholders, and request their co-operation, nor were the matters complained of such as required action at once. It had already been delayed for years by the acquiescence of the plaintiffs. It seems to me, therefore, according to the rules of law hereinbefore stated, that the plaintiffs have entirely failed to aver such facts in their bill as would authorize them to institute or maintain this suit.

It is, however, contended, that our statute has modified the general rule of law so as to authorize a creditor or stockholder to institute such a suit as this, regardless of the wishes of a majority of the stockholders. The fifty seventh section of chapter 53 of the Code authorizes not less than one third in interest of the stockholders to apply by bill in equity to wind up the affairs of the corporation. The bill in this cause has no reference to this provision, for two reasons: *first,* it is not filed by one-third in interest of the stockholders; and, *sec-*

*ond*, it is not for winding up the affairs of the corporation. The fifty eighth section of the same chapter provides : "When a corporation expires, or is dissolved, or before its expiration or dissolution, upon sufficient cause being shown therefor, such court as is mentioned in the preceding section may, on the application of a creditor or stockholder, appoint one or more persons to be receivers " *etc.*, of its property, and grant injunctions. The clear purpose of this statute is merely to authorize the appointment of a receiver and the granting of injunctions in suits properly brought and has no reference to the manner in which or by whom such suit shall be instituted. It is not intended to change the general law as to the right to bring the suit, but only declares, what may be done, in such suit, after it has been rightly and properly brought by the proper authority.

For the reasons stated, I am of opinion that this suit was improperly brought, and, that, therefore, the decree of the Circuit Court must be reversed, and the bill dismissed.

REVERSED.