# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2019 Term

_____

No. 19-0450

_____

FILED

November 19, 2019

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

THE JOHN A. SHEPPARD MEMORIAL
ECOLOGICAL RESERVATION, INC.,
Defendant below, Petitioner

v.

MICHAEL FANNING and
MICHAEL SAGER,
Plaintiffs below, Respondents

_____

Certified Question from the United States District Court
for the Southern District of West Virginia
The Honorable Joseph R. Goodwin, Judge
Civil Action No. 2:18-CV-01183

CERTIFIED QUESTION ANSWERED

_____

Submitted: November 5, 2019
Filed: November 19, 2019

Ryan McCune Donovan, Esq.
J. Zak Ritchie, Esq.
Michael B. Hissam, Esq.
Hissam Forman Donovan Ritchie
PLLC
Charleston, West Virginia
Counsel for the Petitioner

Kurt Entsminger, Esq.
Phillip Estep, Esq.
Estep Entsminger Law Group PLLC
Charleston, West Virginia
Counsel for the Respondents

JUSTICE HUTCHISON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1. "A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court." Syllabus Point 1, *Light v. Allstate Ins. Co*., 203 W.Va. 27, 506 S.E.2d 64 (1998).

2. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus Point 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975).

3. "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syllabus Point 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970).

4. When the Legislature models a statute after a uniform act, but does not adopt particular language, courts may conclude that the omission was deliberate or intentional, and that the Legislature rejected a particular policy of the uniform act.

5. Other than as authorized by West Virginia Code § 31E-3-304(b)(2) (2002), the West Virginia Nonprofit Corporation Act does not confer the right upon a director to bring a derivative action on behalf of the nonprofit corporation.

i

**HUTCHISON, Justice**:

West Virginia Code § 31E-3-304(b)(2) (2002) permits a member of a nonprofit corporation's board of directors to file an "ultra vires" derivative suit against another member of the board of directors to challenge the validity of an action by the corporation. A federal district court has certified a question to this Court: beyond the derivative suit mentioned in West Virginia Code § 31E-3-304(b)(2), may a member of the board of directors file a derivative suit against another director to recover damages or other relief on behalf of the nonprofit corporation?

As we discuss below, we answer the question in the negative. We find the Legislature intended to preclude such derivative suits on behalf of nonprofit corporations.

## I. Factual and Procedural Background

In 1976, Edwina Sheppard Pepper incorporated The John A. Sheppard Memorial Ecological Reservation, Inc. ("JASMER"). JASMER was incorporated as a nonprofit corporation under West Virginia law. It has its principal place of business in Kermit, West Virginia, and it owns and leases lands near there. JASMER continues to operate as a nonprofit organization.

Plaintiffs Michael Fanning and Michael Sager are currently members of the JASMER board of directors. They are also descendants of Ms. Pepper. Both men reside outside of West Virginia.

1

On July 26, 2018, the plaintiffs filed the instant case in the United States District Court for the Southern District of West Virginia against numerous defendants including JASMER and various other members of JASMER's board of directors. The plaintiffs later amended their complaint.[1] According to the district court, the plaintiffs' seven-count amended complaint contains two categories of grievances. The first category of grievances, contained in Counts One and Two, sound in property law and allege plaintiff Fanning has a right to occupy certain real property owned by JASMER. These two counts are not at issue in this case.

The second category of grievances, contained in Counts Three through Seven, are "derivative claims," that is, claims brought by some members of the board of directors against the other purported members of that board to recover damages for the nonprofit corporation. The district court described the second category as follows:

> Counts Three through Seven assert numerous related claims arising from an alleged breach of duties and mismanagement by the members of the nonprofit's board. Specifically, Count Three alleges that the board members breached their fiduciary duties; Count Four alleges constructive fraud and private inurement by certain board members; Count Five alleges conversion of property by certain board members; Count Six raises a challenge to the legitimacy of the board members; and Count Seven alleges a civil conspiracy among the board members for ill-described misconduct.

---

[1] We decline to recite the complicated factual allegations made by the plaintiffs, and the similarly complicated counter-allegations made by the defendants. These allegations have no bearing on the legal question raised by the district court.

2

JASMER, along with other defendants who were members of the board of directors, moved to dismiss Counts Three through Seven of the plaintiffs' amended complaint. The defendants asserted that West Virginia law regarding nonprofit corporations does not authorize the plaintiffs' derivative claims. The defendants argued to the federal district court that the plaintiffs had failed to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6).

The district court determined that the defendants' motion to dismiss raised a novel question of West Virginia law with significant public policy considerations. *See Bragg v. United States*, 488 F. App'x 672, 676 (4th Cir. 2012) (suggesting factors for federal courts to weigh when deciding to certify questions to this Court). Accordingly, the district court certified the following question to this Court:

> Other than as expressly authorized by West Virginia Code § 31E-3-304(b)(2), does West Virginia law authorize derivative actions for state law claims brought on behalf of West Virginia nonprofit corporations?

We accepted the district court's certified question for review.

## II. Standard of Review

The question certified by the district court is purely one of law. Accordingly, we give the question a plenary review. *See* Syl. pt. 1, *Light v. Allstate Ins. Co.*, 203 W.Va. 27, 506 S.E.2d 64 (1998) ("A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court."); Syl. pt. 1, *Bower v. Westinghouse Elec. Corp.*, 206 W.Va. 133, 522 S.E.2d 424 (1999)

3

("This Court undertakes plenary review of legal issues presented by certified question from a federal district or appellate court.").

## III. Discussion

Counts Three through Seven of the plaintiffs' amended complaint assert a derivative action. "A derivative action is a vehicle that enables the prosecution of claims on behalf of a corporation or other entity. A derivative action . . . asserts, on the corporation's behalf, claims that it has not prosecuted itself." Deborah A. DeMott, *Shareholder Deriv. Actions L. & Prac.* § 1:1 (2018). "A fundamental principle of the law of corporations is that a shareholder derivative action is an equitable proceeding in which a shareholder asserts, on behalf of the corporation, a claim that belongs to the corporation rather than the shareholder." Syl. pt. 2, *Manville Pers. Injury Settlement Tr. v. Blankenship*, 231 W.Va. 637, 749 S.E.2d 329 (2013).

A derivative action on behalf of a *for-profit corporation* has long been recognized in West Virginia. *See Rathbone v. Parkersburg Gas Co.*, 31 W.Va. 798, 805, 8 S.E. 570, 573 (1888) (when a "corporation has been dissolved or disabled from proceeding on its own behalf by reason of the misconduct or disability of its agents, . . . the shareholders may themselves proceed in chancery for the protection of their equitable rights."). A derivative action allows shareholders of a for-profit corporation to seek relief on behalf of the corporation. This case asks whether West Virginia's statutory or common law recognizes a derivative action on behalf of a *nonprofit corporation*. Because nonprofit

4

corporations do not have shareholders, this case asks whether a director may seek relief on behalf of the corporation.

The question certified by the district court centers upon the West Virginia Nonprofit Corporation Act, W.Va. Code §§ 31E-1-101 to -16-1603, a statutory scheme that was enacted by the Legislature in 2002. *See* 2002 Acts of the Legislature, ch. 69. The Legislature based its enactment on the REVISED MODEL NONPROFIT CORPORATION ACT, a uniform act drafted over the course of a decade by a committee of the American Bar Association and formally adopted in 1987. Lizabeth A. Moody, *The Who, What, and How of the Revised Model Nonprofit Corporation Act*, 16 N. Ky. L. Rev. 251 (1989).

The West Virginia Nonprofit Corporation Act explicitly permits one form of a derivative action by a member of the board of directors of a nonprofit corporation: an action to challenge an ultra vires act. "The term 'ultra vires' means beyond the power. It, generally, refers to an act that is beyond the scope of power allowed or granted by a corporate charter, articles of incorporation, bylaw, or law." 18B Am. Jur. 2d *Corporations* § 1712 (2019). West Virginia Code § 31E-3-304 (2002) permits the following derivative cause of action:

> (b) A corporation's power to act may be challenged:
>
> (1) In a proceeding by a member or director against the corporation to enjoin the act;
>
> (2) In a proceeding by the corporation, directly, derivatively, or through a receiver, trustee, or other legal representative, against an incumbent or former director, officer, employee, or agent of the corporation; or

5

(3) In a proceeding by the attorney general to dissolve the corporation or to enjoin the corporation from the conduct of unauthorized affairs.

(Emphasis added). The parties (and directors) in this case are not seeking to challenge any act by JASMER as ultra vires, and so agree that West Virginia Code § 31E-3-304(b)(2) is not controlling.

The parties also agree that, aside from West Virginia Code § 31E-3-304(b)(2), there is no language in the Nonprofit Corporation Act explicitly authorizing any other form of a derivative cause of action. The district court's question asks, therefore, "does West Virginia law authorize derivative actions for state law claims brought on behalf of West Virginia nonprofit corporations?" We hold that it does not.

The plaintiffs argue that the right of a director of a nonprofit corporation to bring a derivative action is an equitable remedy that implicitly arises under West Virginia's common law. The plaintiffs eloquently contend that the silence of the Nonprofit Corporation Act does not preclude a derivative action, because such an action exists independent of any statutory authority. They point out that the West Virginia Business Corporation Act (W.Va. Code §§ 31D-1-101 to -17-1703), also adopted in 2002, is also silent about derivative actions, yet this Court has long permitted such actions on behalf of for-profit corporations as an equitable remedy. They assert that the lack of statutory authority to bring a derivative action on behalf of a nonprofit corporation does not preclude this Court from exercising its inherent equitable powers to permit such actions.

6

JASMER begins its argument with the obvious: the Nonprofit Corporation Act does not authorize the derivative action brought by the plaintiffs. Moreover, JASMER argues that this Court has never permitted, implicitly or expressly, an equitable, common law derivative action on behalf of a nonprofit entity. JASMER asserts that this case is not about what the law says *now*, but whether the law should be changed to permit such actions. And that, JASMER argues, raises an additional consideration: who should change the law, the Legislature or the Court?

We focus our analysis on the text of the Nonprofit Corporation Act, and its precursor, the ABA's REVISED MODEL NONPROFIT CORPORATION ACT. As it was drafted, the model act contained a provision explicitly permitting derivative actions on behalf of nonprofit corporations. Section 6.30(a) provided as follows:

> (a) A proceeding may be brought in the right of a domestic or foreign corporation to procure a judgment in its favor by:
>
> > (i) any member or members having five percent or more of the voting power or by fifty members, whichever is less; or,
> >
> > (ii) any director.

Marilyn E. Phelan, "Appendix B: REVISED MODEL NONPROFIT CORPORATION ACT," 3 *Nonprofit Organizations: Law and Taxation* 285 (2d Ed. 2019).[2] A drafter of the model

---

[2] Section 6.30 of the REVISED MODEL NONPROFIT CORPORATION ACT, Second Edition, provided in full:

**Section 6.30. Derivative Suits.**

(a) A proceeding may be brought in the right of a domestic or foreign corporation to procure a judgment in its favor by:

(i) any member or members having five percent or more of the voting power or by fifty members, whichever is less; or,

(ii) any director.

(b) In any such proceeding, each complainant shall be a member or director at the time of bringing the proceeding.

(c) A complaint in a proceeding brought in the right of a corporation must be verified and allege with particularity the demand made, if any, to obtain action by the directors and either why the complainants could not obtain the action or why they did not make the demand. If a demand for action was made and the corporation's investigation of the demand is in progress when the proceeding is filed, the court may stay the suit until the investigation is completed.

(d) On termination of the proceeding the court may require the complainants to pay any defendant's reasonable expenses (including counsel fees) incurred in defending the suit if it finds that the proceeding was commenced frivolously or in bad faith.

(e) If the proceeding on behalf of the corporation results in the corporation taking some action requested by the complainants or otherwise was successful, in whole or in part, or if anything was received by the complainants as the result of a judgment, compromise or settlement of an action or claim, the court may award the complainants reasonable expenses (including counsel fees).

(f) The complainants shall notify the attorney general within ten days after commencing any proceeding under this section if the proceeding involves a public benefit corporation or assets held in charitable trust by a mutual benefit corporation.

Marilyn E. Phelan, "Appendix B: REVISED MODEL NONPROFIT CORPORATION ACT," 3 *Nonprofit Organizations: Law and Taxation* 285 (2d Ed. 2019).

act noted that Section 6.30 "attempts to settle a longstanding debate over whether or not a member of the [nonprofit] corporation may bring a derivative action in the right of the corporation. It authorizes any director or members of a [nonprofit] corporation subject to the Act . . . to bring a derivative suit on behalf of the corporation." Lizabeth A. Moody, *The Who, What, and How of the Revised Model Nonprofit Corporation Act*, 16 N. Ky. L. Rev. at 274.[3]

However, the Legislature explicitly removed Section 6.30 of the REVISED MODEL NONPROFIT CORPORATION ACT when it enacted the West Virginia Nonprofit Corporation Act. We find no mention of Section 6.30 in the legislative history, and no vestige of the section in the final version of the Act adopted into law. *See generally* 2002 Journal of the House of Delegates, H.B. 2899. This is not a situation where we must surmise what the Legislature meant by silence; rather, this is the rare instance where the Legislature expressly acted to adopt a comprehensive model or uniform act, but simultaneously and deliberately deleted a specific provision.

It is the duty of this Court to construe the Nonprofit Corporation Act to ascertain and give effect to the Legislature's purpose and intent. Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). "Where the language

---

[3] The American Bar Association Section of Business Law substantially reworked the REVISED MODEL NONPROFIT CORPORATION ACT in 2008. "Derivative Proceedings" are now the subject of a separate chapter of the uniform law. *See* MODEL NONPROFIT CORPORATION ACT, THIRD EDITION, §§ 13.01 to 13.09 (2008).

9

of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970). Beyond the narrow language contained in West Virginia Code § 31E-3-304(b)(2), the parties direct us to no language in the Act expressly permitting a derivative cause of action. We think the Legislature clearly drafted the Nonprofit Corporation Act with the goal of precluding most derivative claims.

Moreover, even if we were to find the Nonprofit Corporation Act ambiguous, a well-established canon of statutory interpretation shows that the Legislature did not intend to grant an individual director standing to bring derivative lawsuits on behalf of a nonprofit corporation. "[W]hen a legislature models a statute after a uniform act, but does not adopt particular language, courts conclude the omission was 'deliberate,' or 'intentional,' and that the legislature rejected a particular policy of the uniform act." Norman Singer, Shambie Singer, 2B Sutherland Statutory Construction § 52:5 (7th ed., 2007). In other words, when a uniform or model act in an area of law contains a certain provision, but the Legislature fails to adopt that provision when adopting other parts of the act, courts usually conclude that the Legislature intended to reject the provision and the policy goals that accompanied the provision.

We therefore hold that when the Legislature models a statute after a uniform act, but does not adopt particular language, courts may conclude that the omission was deliberate or intentional, and that the Legislature rejected a particular policy of the uniform act.

10

As drafted by the American Bar Association, Section 6.30 of the REVISED MODEL NONPROFIT CORPORATION ACT expressly grants directors the standing to bring derivative suits. Despite the opportunity to do so, our Legislature did not adopt this provision. We must therefore conclude that the Legislature intentionally declined to give to directors the right to bring a derivative action on behalf of a nonprofit corporation.

The author of the leading treatise on derivative lawsuits has found that "[m]ost states do not permit a member of a not-for-profit to sue derivatively on its behalf." Deborah A. DeMott, *Shareholder Deriv. Actions L. & Prac.* § 2:12 (2018).

> Thus, the member either must persuade the corporation's directors to take action on its behalf—which they are unlikely to do if they are the cause of the mismanagement—or must persuade the state's attorney general, typically the state official charged with protecting the interests of not-for-profit corporations and charitable trusts, to pursue the complaint. If neither of these courses is successful, the member's grievance goes unanswered.

*Id.* The parties have directed us to no language in the West Virginia Nonprofit Corporation Act to support the derivative claims on behalf of JASMER that the plaintiffs seek to pursue in this case.

Consequently, we hold that, other than as authorized by West Virginia Code § 31E-3-304(b)(2) (2002), the West Virginia Nonprofit Corporation Act does not confer the right upon a director to bring a derivative action on behalf of the nonprofit corporation.

11

## IV. Conclusion

The district court's certified question asked:

> Other than as expressly authorized by West Virginia Code § 31E-3-304(b)(2), does West Virginia law authorize derivative actions for state law claims brought on behalf of West Virginia nonprofit corporations?

We answer the district court's question in the negative.

Certified question answered.