AETNA CASUALTY & SURETY CO., Rodger W. Robare and Patricia Robare, Co–Administrators of the Estate of Rodger C. Robare, deceased, and Herbert McClain and Mary Ann McClain, Co–Administrators of the Estate of Stephen McClain, deceased, Plaintiffs,

v.

NATIONWIDE MUTUAL INSURANCE CO., Defendants.

Civ. A. No. 87–1838.

United States District Court, W.D. Pennsylvania.

Sept. 28, 1989.

---

**15.** The plaintiff also seeks costs. He should file a request for these with the Clerk of the Court.

Louis B. Loughren, Pittsburgh, Pa., for Aetna Cas. & Sur. Co.

Arthur Cutruzzula, Pittsburgh, Pa., for plaintiffs Robare and McClain.

Peter B. Skeel, Pittsburgh, Pa., for Nationwide Mut.

## MEMORANDUM ORDER

D. BROOKS SMITH, District Judge.

In the early morning hours of August 1, 1981, Donna Marie Pekarcik killed Rodger Robare and Stephen McClain by negligently driving a 1979 Dodge Ramcharger into the 1972 Pinto which Robare was driving and in which McClain was a passenger. Nationwide Mutual Insurance Company insured the Ramcharger pursuant to a policy which listed as named insureds the holder of the title of the 1979 Dodge, John Nigro, and his wife Virginia Nigro. Nationwide denied coverage to Pekarcik on the grounds that she was not a permitted user of the vehicle and was therefore not insured. Pekarcik was the girlfriend of Nicholas Nigro, the Nigros' son. Nicholas had asked Pekarcik to move the vehicle from a driveway at a party that Nicholas and Pekarcik were attending. Pekarcik did so, but then took the vehicle to a nearby bar. On her return trip, she struck the Pinto head-on.

Substantial judgments in a tort action were obtained against Pekarcik, but not against the Nigros, by the administrators of the estates of Robare and McClain. In this matter, Aetna seeks to recover from Nationwide amounts it paid to the Robare and McClain estates under its uninsured motorists coverage for the Robare vehicle. The administrators of the Robare and McClain estates seek a judgment against Nationwide in excess of Nationwide's policy limits for its alleged bad faith refusal to defend and indemnify Donna Pekarcik.

Before the Court at this time are several pretrial motions. We dispose of the motions to compel discovery. We deny Nationwide's and Aetna's motions for summary judgment, deny by the slimmest of margins Nationwide's motion for partial summary judgment, and grant the motion to bifurcate.

First, plaintiffs Rodger W. Robare and Patricia Robare and Herbert McClain and Mary Ann McClain, suing in their own right and as administrators of their deceased sons Rodger C. Robare and Stephen McClain, seek to compel production of several memoranda from John W. McCandless,

Esquire, a claims attorney for defendant Nationwide, to defendant Nationwide's home office. Plaintiffs also seek a copy of a binder containing materials prepared by Nationwide for in-house seminars dealing with the proper handling of insurance claims. Plaintiffs additionally seek several sets of correspondence and records, and answers to deposition questions dealing with Nationwide's handling of the tort action which gave rise to this lawsuit. Nationwide objects that the information sought is privileged material, or trial preparation material, and that some of the information sought is simply irrelevant.

The leading case in this Circuit summarizing the applicable privileges, the Pennsylvania attorney-client privilege, 42 Pa.C.S. § 5928, and the federal work product privilege, Fed.R.Civ.P. 26(b)(3), is *United Coal Companies v. Powell Construction Company*, 839 F.2d 958 (3d Cir.1988). We rule on the disputed discovery requests in accordance with the Court's instructions in that case. Because no party requested it, we do not hold an *in camera* inspection of the documents sought by plaintiffs.

■ Plaintiffs seek in their Motion to Compel, Paragraphs 1–3, production of two memos prepared on August 3, 1987, and August 6, 1987, by McCandless, discussing the instant bad faith litigation, and sent to his superiors at Nationwide. If the memos had been prepared in the underlying tort action, they would unquestionably be discoverable. However, the record, McCandless deposition, 19, clearly indicates that the memos were McCandless' legal analysis of the bad faith action. They are protected under the attorney-client confidential communications privilege.

■ Plaintiffs seek, in Paragraphs 4–5, binders prepared by Nationwide for use in its in-house seminars on claims handling procedures in 1986. The information contained in those binders is not relevant to the alleged bad faith denial of coverage to Pekarcik in 1981–1982. However, the attorney for Nationwide agreed to produce them. (McCandless depo., 42). We order its production, therefore.

Plaintiffs' Paragraphs 6, 13, and 14 are moot.

Plaintiffs' requests in Paragraphs 7–11 are denied as insufficiently definite to allow the Court to rule on particular documents.

Plaintiffs' Paragraph 12, seeking Nationwide's information regarding reserves was apparently provided at the deposition of Gerald Dugan. (Dugan depo. 4–5)

■ Plaintiffs seek, in paragraph 17, disclosure of conversations between Nationwide's in-house attorneys and its retained counsel relative to this litigation. (Flynn depo. 7–10) We cannot tell what the question is, other than its general nature, which appears to call for a disclosure of privileged attorney-client conversations. *United Coal Companies*, 839 F.2d 958, 965. We deny the request.

■ Plaintiffs' Paragraphs 18–25 ask, in different ways, for Flynn to give legal opinions to plaintiffs. Paragraph 18, for example (Flynn depo. 38–40), seeks Flynn's opinion of the decision to deny coverage made in the underlying case by Nationwide's attorney Thomas Meloy. Paragraph 19 asks for an admission that Nationwide assumed Pekarcik's defense, a position consistently repudiated by Nationwide. Paragraph 20 seeks information about the extent of the legal research which Flynn may have undertaken in connection, not with the underlying tort action (for which it would be relevant), but with this litigation. Paragraphs 21–25 ask for legal opinions from Flynn, or documents containing his legal opinions regarding coverage for Pekarcik. Flynn, who had no contact with the underlying tort action (Flynn depo. 13), cannot be called upon by plaintiffs to render legal opinions as plaintiffs' expert. Nor are plaintiffs' inquiries proper requests for admissions. Finally, Flynn's opinions, formed as they were well after the underlying tort action ended, are not legally or factually relevant to Nationwide's alleged bad faith denial of coverage in 1981–1982.

■ Plaintiffs' Paragraph 28 is moot: the information was provided. (Zuraf deposition, 10–11) The information sought in

Paragraph 29, the substance of counsel's discussions concerning whether Nationwide *should* have taken a statement from Donna Pekarcik, also calls for disclosure of legal opinions developed by counsel for Nationwide. Plaintiffs fail even to credibly allege in this and in previous Paragraphs 18–25 reasons why such opinion work product should be disclosed. See *United Coal Companies*, 839 F.2d 958, 966.

Secondly, defendant Nationwide Insurance Company seeks answers to interrogatories served upon plaintiffs. Nationwide asserts that plaintiffs have refused to answer interrogatories served upon them until they receive material requested in their motion to compel. Plaintiffs have not responded to, or opposed defendant Nationwide's motion. We therefore grant defendant's motion.

Third, Nationwide has filed a *Motion for Summary Judgment*, asserting that as a matter of law it had no duty to represent, defend, or indemnify Donna Pekarcik, the defendant in the underlying tort action. Nationwide grounds its motion on the language of the Nationwide Insurance policy, as well as the assertedly uncontradicted evidence that Donna Pekarcik was not operating the vehicle with the permission of Nationwide's insureds, Virginia Nigro and John Nigro, or their son Nicholas Nigro, when she caused the death of Rodger C. Robare and Stephen McClain. We address this below.

■ Fourth, Nationwide seeks to trifurcate, pursuant to Fed.R.Civ.P. 42(b), the trial of the issues of Nationwide's liability to plaintiffs and Nationwide's alleged bad faith denial of coverage to Donna Pekarcik. Nationwide suggests that the damages issue be tried only after the questions of coverage and bad faith are decided. We grant the motion because of the substantial risk of prejudice to Nationwide from joining the coverage and bad faith issues. The issues of coverage will be tried first.

Fifth, Nationwide seeks partial summary judgment on the bad faith issue. Nationwide asserts that because there is no evidence of bad faith, the damages recoverable by plaintiffs are limited to the value of the policy issued by Nationwide to the Nigros. We address this below.

■ Sixth, Aetna seeks partial summary judgment in its favor against Nationwide. This motion, filed on September 26, 1989, for a trial scheduled to commence October 2, 1989, is denied as untimely. It is also, without need for response, denied as meritless.

*Nationwide's Motion for Summary Judgment*

■ Nationwide provided liability coverage to John Nigro and Virginia Nigro for the 1979 Ramcharger under a policy which provided, in pertinent part:

| | | |
|---|---|---|
| Part IV Liability Insurance | A.1. | *We* will pay all sums the *insured* legally must pay as damages because of bodily injury or property damage to which the insurance applies, caused by an accident and resulting from the ownership maintenance or use of a covered *auto.* |
| | | . . . |
| | D.1. | *You* are an *insured* for any covered auto. |
| | 2. | Anyone else is an *insured* while using with *your* permission a covered auto *you* own, hire or borrow except;<br>a. Someone using a covered *auto you* hire or borrow from one of *your* employees or a member of his or her household. |
| | | . . . |
| Part I. Words and Phrases with Special Meaning– | A. | *"You"* and *"Your"* mean the person or organization shown as the named insured in ITEM ONE of the declarations. |

B. ...

F. *"Insured"* means any person or organization qualifying as an insured in the WHO IS INSURED section of the applicable insurance.... [Part IV.D.]

---

This omnibus clause requires that to be insured, Donna Pekarcik, the driver of the Ramcharger, must have been driving with the permission of one of the two named insureds, John Nigro and Virginia Nigro. The policy is unambiguous and does not permit Nicholas Nigro, who was neither a named insured nor holder of the title to the vehicle, to bind Nationwide by permitting Pekarcik to drive the vehicle, except insofar as the named insureds granted him permission to allow her to drive. The named insureds' permission, however, may be either express or implied. *Federal Kemper Insurance Company v. Neary,* 366 Pa.Super. 135, 530 A.2d 929, 931 (1987). While there seems to be little or no evidence of express permission by the Nigros to Pekarcik, there is sufficient evidence that they may have, by a continuing course of conduct, granted her implied permission to drive the 1979 Ramcharger. Accordingly, the question of Nationwide's liability must be submitted to a jury.

*Nationwide's Motion for Partial Summary Judgment*

 Nationwide has also filed a Motion for Partial Summary Judgment, asserting that there is no evidence of bad faith in its refusal to defend Donna Pekarcik in the underlying tort action. Plaintiffs did not file any additional responses to this motion, but rely on the responses filed to Nationwide's Motion for Summary Judgment.

The facts are uncontested that on August 1, 1981, Nicholas Nigro, the son of the named insureds and the principal user of the 1979 Ramcharger, asked his girlfriend, Donna Pekarcik to move the Ramcharger from the driveway of a house where Nigro and Pekarcik were at a party, so that one Frank Turkowski could move his vehicle. Pekarcik moved the Ramcharger, and drove to the Stewball Lounge. She was enroute back from this bar when she struck the 1972 Pinto, killing Robare and McClain.

On August 7, 1981, the accident was reported to Nationwide, and the matter assigned to Gerald Dugan, a Nationwide adjuster, on August 10, 1981. Dugan recorded statements from John and Nicholas Nigro the next day, August 11, 1981. Dugan attempted to obtain a statement from Pekarcik but was informed by Pekarcik's father that she had been advised by her defense counsel from the Allegheny County Public Defender's office not to give any statements. Dugan wrote to Pekarcik that her failure to cooperate would lead Nationwide to deny her coverage. Pekarcik's attorney advised Dugan by letter on September 15, 1981, that Pekarcik was willing to cooperate. Dugan did not take Pekarcik's statement at this time. Nationwide denied coverage to Pekarcik in March, 1982, based on the statements taken from the Nigros and on an opinion from outside counsel that Pekarcik did not have permission to use the vehicle. Arguably, this fell below the standard of good faith investigation.

In 1984, Pekarcik's deposition was taken for use in the trial of the underlying tort action. Pekarcik testified at that trial in 1985. Her deposition was taken again in 1989 for this action. Based on review of her testimony on those occasions it is quite possible that Nationwide would be justified in denying coverage to Pekarcik even if her statement had been taken between September, 1981 and March, 1982 as part of Nationwide's investigation. There is no undisputed evidence of record, however, that Nationwide would have made the same decision to deny coverage to Pekarcik after taking her statement. The question of causation, therefore, is for the jury.

 Although we deny the motion for partial summary judgment, we empha-

size that we reject plaintiffs' contentions that Nationwide interfered in Pekarcik's defense and is therefore estopped to deny coverage, that Nationwide should have filed a declaratory judgment action, or that Nationwide's payment of Pekarcik's trial attorneys fees created a conflict of interest. There is not a scintilla of evidence that Nationwide's actions in the underlying tort action were improper, or that Attorney Goodrich's stewardship of Pekarcik's defense was impaired in any way.

## ORDER

It is ORDERED, consistent with the foregoing, that

1. The parties shall exchange any pending discovery material, consistent with this memorandum, forthwith.

2. The defendant's Motion for Summary Judgment and Partial Summary Judgment are denied.

3. Aetna's Motion for Summary Judgment is denied.

4. The Motion to Bifurcate is granted. Trial of the coverage issue shall take place first. The trial of the bad faith issues shall follow.