433 S.E.2d 532

**Diane RUSSELL, Plaintiff
Below, Appellant,**

v.

**AMERISURE INSURANCE COMPANY,
a Michigan Corporation, Defendant
Below, Appellee.**

**No. 21352.**

Supreme Court of Appeals of
West Virginia.

Submitted May 4, 1993.

Decided July 16, 1993.

James G. Bordas, Jr., James B. Stoneking, Wheeling, for appellant.

Daniel A. Ruley, Jr., Parkersburg, for appellee.

PER CURIAM:

Appellant Diane Russell appeals from the April 22, 1992, order of the Circuit Court of Marshall County granting Appellee Amerisure Insurance Company's ("Amerisure's") motion to dismiss. Appellant's cause of action against Amerisure was predicated on allegations of unfair claim settlement practices pursuant to West Virginia Code § 33–11–4(9) (1992).[1] As

---

**1.** West Virginia Code § 33–11–4(9) sets forth fifteen unfair claim settlement practices and directs that "No person shall commit or perform with such frequency as to indicate a general business practice any of the following[.]" In her complaint Appellant alleges that Amerisure committed the following five unfair claim settlement practices:

grounds for its ruling, the circuit court found that Appellant's failure to first resolve the underlying tort claim against Amerisure's insured as well as her failure to aver that the alleged unfair claim settlement practice constituted a general business practice were fatal with respect to her cause of action under West Virginia Code § 33–11–4(9). Finding no error in the dismissal of Appellant's complaint, we affirm the decision of the circuit court.

Appellant alleges that while driving her automobile in Wheeling, West Virginia, on March 18, 1988, she was negligently rear-ended by Amerisure's insured, Sanford Alan Miezlish. Appellant personally notified Amerisure of a possible claim arising from the March 18, 1988, incident and dealt directly with Amerisure in an effort to reach a settlement as she was unrepresented by an attorney. During oral argument of this case, Amerisure stated that the only expense-related evidence submitted by Appellant was documentation reflecting an expenditure of $176 for an emergency room visit. Appellant represented during oral argument that she had received and returned uncashed a settlement check from Amerisure for the amount of $700. Appellant never instituted a civil action against the alleged tortfeasor in this case, Mr. Miezlish.

On February 11, 1992, Appellant filed a complaint against Amerisure, alleging unfair claim settlement practices pursuant to West Virginia Code § 33–11–4(9). In response to the complaint, Amerisure filed an answer and a motion to dismiss on March 12, 1992. In its motion to dismiss, Amerisure argued that "a private cause of action for violation of West Virginia Code § 33–11–4(9) may not be maintained until after the underlying civil action against the insured is concluded." By memorandum order entered on April 22, 1992, the circuit court granted Amerisure's motion to dismiss, finding that

> After careful consideration of the pleadings, argument of counsel, and their respective memorandum [sic] the Court is of the opinion that *Jenkins v. J.C. Penney Casualty [Ins.], Co.,* [167 W.Va. 597], 280 S.E.2nd [sic] 252 (1981) is dispositive of the matter sub judice. Plaintiff failed to resolve her underlying tort claim against defendants' [sic] insured and the complaint failed to allege that the practice in question was a general business practice that would give rise to the statutory remedy of a direct action.

It is from this order that Appellant brings this appeal.

■ This Court ruled in *Jenkins v. J.C. Penney Casualty Insurance Co.,* 167 W.Va. 597, 280 S.E.2d 252 (1981), that West Virginia Code § 33–11–4(9), which pertains to unfair insurance claims settlement practices, gives rise to a direct cause of action against an insurance company by a third-party claimant. That ruling was expressly limited, however, by the requirement that such a direct cause of action could not be maintained "until the underlying suit against the insured has been resolved." *Id.* at 598, 280 S.E.2d at 254. Appellant proposes that the *Jenkins* ruling be modified so that a third-party claimant is not barred from directly suing a liability insurer for unfair claim settlement practices notwithstanding his or her failure to resolve the underlying tort cause of action if the insurer has violated state insurance regulations by failing to disclose the statute of limitations and delaying communications

(a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;
(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
(c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
(f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; and
(g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when such insureds have made claims for amounts reasonably similar to the amounts ultimately recovered;
W.Va.Code § 33–11–4(9).

with the claimant until after the claim has become time-barred.

The *Jenkins* case is factually apposite to Appellant's case. The plaintiff in that case was involved in a minor automobile accident which resulted in $177 worth of damage to her vehicle.[2] Rather than suing the driver of the other vehicle, she filed suit against the driver's insurer alleging that the insurer had violated West Virginia Code § 33–11–4(9)(f) by " 'not attempting in good faith to effectuate prompt, fair and equitable settlement of claims in which liability has become reasonably clear.' " 167 W.Va. at 598, 280 S.E.2d at 254. The trial court granted the insurer's motion to dismiss, ruling that West Virginia Code § 33–11–4(9) did not give rise to a private cause of action. *Id.* at 599, 280 S.E.2d at 254. Although this Court affirmed the decision of the trial court, we found that: "An implied private cause of action may exist for a violation by an insurance company of the unfair settlement practice provisions of W.Va.Code, 33–11–4(9); but such implied private cause of action cannot be maintained until the underlying suit is resolved." Syl. Pt. 2, *Jenkins*, 167 W.Va. at 598, 280 S.E.2d at 253.

In *Jenkins*, we explained the necessity for requiring settlement of the underlying claim as a prerequisite to maintaining a direct action under West Virginia Code § 33–11–4(9):

> In the present case, the claim is made under W.Va.Code, 33–11–4(9)(f), which involves not attempting in good faith to make a prompt, fair settlement of a claim in which liability has become reasonably clear. It can hardly be doubted that in a given factual situation there may be some bona fide dispute over what is a fair settlement offer or whether liability is reasonably clear. Given the adversarial nature of the settlement of tort claims, it can be expected that the parties will often disagree as to whether there has been a reasonable attempt made to promptly and fairly settle a claim where the liability is reasonably clear.

> To permit a direct action against the insurance company before the underlying claim is ultimately resolved may result in duplicitous litigation since the issue of liability and damages as they relate to the statutory settlement duty are still unresolved in the underlying claim. Once the underlying claim has been resolved, the issues of liability and damages have became settled and it is possible to view the statutory claim in light of the final result of the underlying action. A further policy reason to delay the bringing of the statutory claim is that once the underlying claim is resolved, the claimant may be sufficiently satisfied with the result so that there will be no desire to pursue the statutory claim. Moreover, it is not until the underlying suit is concluded that the extent of reasonable damages in the statutory action will be known.

167 W.Va. at 608–09, 280 S.E.2d at 259 (footnotes omitted).

Based on her characterization of *Jenkins* as a landmark, pro-claimant case, Appellant suggests that the objectives of *Jenkins* will be extirpated absent a reversal of the lower court's ruling. *Jenkins*, however, cannot be narrowly viewed as simply a pro-claimant case which permits direct action by a third-party claimant against an insurer whenever an allegation of unfair settlement practices is made. This Court expressly limited the holding in *Jenkins* to those cases where the underlying suit has already been resolved. This requirement, as we expounded on in *Jenkins*, is rooted in legitimate concerns ranging from inability to identify reasonable damages to duplicitous litigation. *See id.* at 608–09, 280 S.E.2d at 259.

■ Appellant cites Amerisure's actions as the reason for her failure to bring a suit against the tortfeasor and consequently, the bar to successfully maintaining a *Jenkins*-type suit against the insurer. Specifically, Appellant alleges that Amerisure ne-

---

**2.** In this case, the only evidence Appellant submitted to Amerisure as proof of actual damages was an emergency room bill which amounted to $176.

glected to inform her of the two-year statute of limitations [3] and that Amerisure purposefully delayed communication with her near the time when the limitations period was about to lapse. Despite Appellant's allegations that she was induced by Amerisure's malfeasance to delay filing suit against the tortfeasor until after the applicable two-year limitations period had expired, she has not produced any evidence to substantiate these allegations. Amerisure denies that it committed or failed to commit any act constituting malfeasance.[4] Given the absolute dearth of evidence on this issue, there is no factual basis in the record from which any court could conclude that Amerisure induced Appellant, directly or indirectly, to refrain from filing a civil action against the tortfeasor.

Appellant argues that those jurisdictions that bar third-party bad faith suits against insurers compensate for such prohibition by permitting recovery against the insurer under a traditional common-law fraud analysis when a statute of limitations has run because of the insurer's malfeasance or nonfeasance. *See State Farm Mut. Auto. Ins. Co. v. Ling*, 348 So.2d 472 (Ala.1977) (upholding jury verdict finding fraud, deceit, and misrepresentation based on insurer's failure to inform insured that claim was subject to one-year statute of limitations); *see also Lewis v. Royal Globe Ins. Co.*, 170 Ill.App.3d 516, 121 Ill.Dec. 78, 524 N.E.2d 1126 (1988) (holding insurer not exempt from liability to third-party for damages incurred as a result of alleged fraudulent misrepresentations regarding limitations period). In upholding the jury's finding of fraud against the insurer in *Ling*, the appellate court noted

> The record contains ample evidence that supports the jury's conclusion that a relationship of trust and confidence in State Farm by Ling was engendered through the actions and words of the agents of State Farm who dealt with him over the period of four days short of the one year period of limitations, of which they were well aware. This being true, it was the duty of State Farm to disclose to him that vitally material fact of the limited period of time during which he must negotiate the settlement that it assured him it stood ready to make.

348 So.2d at 475. The evidence to which the *Ling* court referred included representations "by State Farm that he had nothing to worry about, the accident was entirely the fault of Crescent Transit [other driver] and his expenses would be paid; [and that] State Farm would settle his claim." *Id.* at 474.

Unlike the *Ling* plaintiff and others who have successfully advocated the application of a common-law fraud analysis to an insurer's failure to inform a third-party claimant of an impending statute of limitations, Appellant has not presented this Court with even a scintilla of evidence to support such a theory. Because Appellant cannot produce any documents reflecting her communications with Amerisure,[5] her case is comprised solely of bare allegations. Accordingly, just as Appellant failed to meet the prerequisite for asserting a *Jenkins*-type suit against Amerisure, she similarly has failed to aver a case grounded in principles of common-law fraud. Appel-

---

**3.** *See* W.Va.Code § 55–2–12 (1981).

**4.** Appellant cites to section 114–14–6.10 of the code of state regulations as evidence of Amerisure's wrongful conduct. That section of West Virginia's insurance regulations requires that "[n]o person shall negotiate for settlement of a claim with a claimant who is neither an attorney nor represented by an attorney without giving the claimant written notice that the claimant's rights may be affected by a statute of limitations...." 8 W.Va. C.S.R. § 114–14–6.10 (eff. 1975). While the penalty imposed for violating this regulation is left to the discretion of the insurance commissioner, it includes license penalties such as suspension, revocation, or failure to renew or the imposition of a fine. Even assuming that Appellant could prove that Amerisure violated § 114–14–6.10, an act of malfeasance that this Court certainly does not condone, a violation of an insurance regulation standing alone does not give rise to a cause of action under West Virginia Code § 33–11–4(9).

**5.** During oral argument of this case, Appellant's counsel conceded that there are no written communications between Amerisure and Appellant regarding the claim and settlement discussions.

lant's arguments regarding a modification of *Jenkins* are premature given her inability to establish that Amerisure induced her failure to timely initiate a cause of action against the alleged tortfeasor.

■ A second ground upon which the lower court relied in dismissing Appellant's complaint was her failure to sufficiently plead a violation of West Virginia Code § 33–11–4(9). The circuit court found that Appellant's "complaint failed to allege that the practice in question was a general business practice that would give rise to the statutory remedy of a direct action." As we ruled in *Jenkins:* "More than a single isolated violation of W.Va.Code, 33–11–4(9), must be shown in order to meet the statutory requirement of an indication of 'a general business practice,' which requirement must be shown in order to maintain the statutory implied cause of action." Syl. Pt. 3, *Jenkins,* 167 W.Va. at 598, 280 S.E.2d at 253. Appellant argues unconvincingly that she has "identified and pleaded five distinct violations of W.Va.Code § 33–11–4(9)" by alleging that Amerisure violated five different subsections of West Virginia Code § 33–11–4(9).[6] The factual basis for each of these violations is the same isolated scenario and does not suffice to represent a "general business practice." W.Va.Code § 33–11–4(9). Accordingly, we agree with the circuit court's conclusion that Appellant failed to properly aver a claim pursuant to West Virginia Code § 33–11–4(9).

Based on the foregoing, the decision of the Circuit Court of Marshall County is hereby affirmed.

Affirmed.