506 S.E.2d 64

**Ira LIGHT, et al., Plaintiffs Below, Respondents,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant Below, Petitioner.**

No. 24365.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 1998.

Decided July 7, 1998.

Dissenting Opinion of Justice McCuskey July 27, 1998.

McCuskey, J., dissented and filed opinion.

---

Brent K. Kesner, Renatha G. Garner, Ellen R. Archibald, Kesner, Kesner & Bramble, Charleston, for Petitioner.

Kevin B. Burgess, Hamilton, Burgess, Young & Pollard, Oak Hill, for Respondents.

DAVIS, Chief Justice:

This Court is presented with a certified question from the United States District Court for the Southern District of West Virginia involving the issue of mandatory bifurcation and a stay of a first-party bad-faith claim against an insurer, pending resolution of the underlying contract or tort claim. We conclude that in a first-party bad faith action against an insurer that also involves an underlying contract or tort claim against the insurer, it is not mandatory that the trial court bifurcate and stay the bad faith claim. Nor, is it mandatory that discovery be stayed on the first-party bad faith claim when bifurcation is ordered.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On January 27, 1993, a motor vehicle operated by Ira Light was struck by a motor vehicle owned by Juanita Keller and driven by her teenage son, Shawn Keller.[1] The Keller vehicle crossed the center line of the roadway. Consequently, the Kellers were "at fault" for the accident. As a result of the collision, Nila Light, a passenger in the vehicle operated by Ira Light, her husband, sustained serious injuries. At the time of the accident, the Lights had a motor vehicle insurance policy with Allstate. The Allstate policy included underinsured motorist coverage in the amount of $100,000. The Kellers were insured by State Farm Mutual Automobile Insurance Company (hereinafter State Farm).

On July 7, 1993, the Lights accepted the full policy limits of $100,000 from State Farm. The Lights executed a release discharging the Kellers from any further claims concerning the accident. Thereafter, the Lights submitted a claim to Allstate for their underinsured motorist coverage, as a result of Mrs. Light's damages exceeding the amount recovered from State Farm. By letter dated November 8, 1993, the Lights were notified by Allstate that Allstate refused to pay the underinsured motorist coverage.

1. The accident occurred in Fayette County, West Virginia.

The underinsured motorist provision contained in the Allstate policy included the following exclusion: "Allstate will not pay any damages an insured person is legally entitled to recover because of ... bodily injury or property damage to any person if that person or that person's legal representative makes a settlement without our written consent." The policy also stated: "When we pay, an insured person's rights of recovery from anyone else become ours up to the amount we have paid. You must protect these rights and at our request help us enforce them." The Lights contend that Allstate knew they were attempting to settle with the Kellers; but, did not intervene or try to prevent them from settling the claim.

As a result of Allstate's failure to pay the uninsured motorist claim, the Lights filed a complaint on January 5, 1995, alleging a breach of contract claim against Allstate. Subsequently, in an amended complaint filed February 22, 1995 the Lights asserted a claim against Allstate for unfair settlement practices under W.Va.Code § 33–11–4(9)(1985). The Kellers were not named as parties.[2] Although the action originated in the Circuit Court of Fayette County, it was removed by Allstate to the United States District Court for the Southern District of West Virginia based upon diversity of citizenship on February 6, 1995.[3]

Allstate maintains it was unaware of the settlement between the Lights and State Farm. Therefore, Allstate did not consent to such a settlement. Allstate has asserted that in the event it were to pay underinsured motorist benefits, the settlement and release executed by the Lights prejudiced Allstate's subrogation rights against the Kellers. As such, Allstate contends that the Lights breached their policy of insurance. Thus, the Lights are not entitled to the underin-sured motorist coverage. In contrast, the Lights assert that any breach of their policy was inconsequential because the Lights were never advised by Allstate of the consent-to-settle provision in their policy. In addition, the Lights assert that, inasmuch as the Kellers were apparently "judgment proof," Allstate's subrogation rights against the Kellers were meaningless. Therefore, Allstate was not prejudiced by the settlement and release. Consequently, the Lights assert that they are entitled to underinsured motorist coverage under their Allstate policy.

In October, 1995, Allstate filed a motion to bifurcate the proceedings. Allstate argued that the litigation of the unfair settlement practices claim with the underlying claim for underinsured motorist coverage was prejudicial to Allstate. The District Court denied the motion. Subsequently, in October, 1996, Allstate filed a motion to reconsider. Allstate sought bifurcation of the two claims. Additionally, Allstate urged the court to stay of the unfair settlement practices claim pending resolution of the underlying claim for underinsured motorist coverage. As a result of the motion to reconsider, the District Court, on July 2, 1997, certified the following question to this Court:

In a case in which the plaintiffs assert an insurance contract claim for first-party underinsured motorist benefits, and a "bad faith" claim pursuant to the Unfair Claims Settlement Practices Act arising out of the contract claim, is it mandatory, under *State ex rel. State Farm Fire & Casualty Co. v. Madden,* 192 W.Va. 155, 451 S.E.2d 721 (1994), for the trial court to bifurcate the claims and stay the "bad faith" claim pending resolution of the contract claim?

The question as advanced does not permit this Court to adequately address the issues posed by the District Court. There are actu-

---

**2.** In January 1995, Nila Light filed a separate action in the Circuit Court of Fayette County against Juanita Keller and Shawn Keller, notwithstanding the Kellers' settlement and release dated July 7, 1993. The purpose of the action was to determine the value of the Lights' underinsured motorist claim against Allstate. The Circuit Court of Fayette County in the action against the Kellers observed: "[T]he defendants need not answer or otherwise defend this claim personally, because plaintiff has given the defendants a complete release of all liability, and this action has been filed solely for the purpose of recovering underinsured motorist insurance benefits." Allstate intervened in the action. That action remains pending in Fayette County.

**3.** *See* 28 U.S.C. 1332 [1988]. After the action was removed to Federal Court the Lights amended their complaint.

ally three legal issues presented by the one certified question: (1) is bifurcation mandatory and, if so, (2) is it mandatory that trial of the bad faith claim be stayed, and (3) is it mandatory that discovery on the bad faith claim be stayed? Because there are actually three legal issues emanating from the one certified question, this Court will modify the question as follows: [4]

> In a case in which the plaintiffs assert an insurance contract claim for first-party underinsured motorist benefits, and a "bad faith" claim pursuant to the Unfair Claims Settlement Practices Act arising out of the contract claim, is it mandatory, under *State ex rel. State Farm Fire & Casualty Co. v. Madden*, 192 W.Va. 155, 451 S.E.2d 721 (1994), for the trial court to: (1) bifurcate the claims, (2) stay trial of the "bad faith" claim, and (3) stay all discovery on the bad faith claim pending resolution of the contract claim?

This Court has before it the order of the District Court entered on July 2, 1997, certifying the above question to this Court, all matters of record and the briefs and argument of counsel. We now proceed to review the parties' arguments and analyze the applicable law.

## II.

### STANDARD OF REVIEW

■ In syllabus point 1 of *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996), this Court held "[t]he ap-

pellate standard of review of questions of law answered and certified by a circuit court is de novo." *See Lawson v. County Commission of Mercer County*, 199 W.Va. 77, 80, 483 S.E.2d 77, 80 (1996); *King v. Lens Creek Limited Partnership*, 199 W.Va. 136, 140, 483 S.E.2d 265, 269 (1996). Similarily, we hold that a de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court.

## III.

### DISCUSSION

#### A.

*In a case in which the plaintiffs assert an insurance contract claim for first-party underinsured motorist benefits, and a "bad faith" claim pursuant to the Unfair Claims Settlement Practices Act arising out of the contract claim, is it mandatory, under State ex rel. State Farm Fire & Casualty Co. v. Madden, 192 W.Va. 155, 451 S.E.2d 721 (1994), for the trial court to: (1) bifurcate the claims; and (2) stay trial of the "bad faith" claim?*

■ Allstate contends that the underlying claim for underinsured motorist coverage and the bad faith claim [5] resulting therefrom should be bifurcated. Allstate further contends that the bad faith claim must be

---

4. "When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in W.Va.Code, 51–1A–1, et seq. and W.Va.Code, 58–5–2 [1967], the statute relating to certified questions from a circuit court of this State to this Court." Syl. pt. 3, *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993). *See Potesta v. United States Fidelity & Guaranty Co.*, 202 W.Va. 308, 313 n. 9, 504 S.E.2d 135, 140 n. 9 (1998).

5. The phrase "bad faith" is used to refer to the state's "unfair settlement practices" statute. *See infra* note 6. However, there is actually a technical distinction between a "bad faith" claim and an "unfair settlement practices" claim. The phrase "bad faith" was developed to describe the common law action against an insurer. The

phrase "unfair settlement practices" was developed to describe the statutory action against an insurer. Because the statutory claim actually includes the elements of a cause of action for the common law claim, our cases use the two phrases interchangeably. *See e.g., State ex rel. West Virginia Fire & Cas. Co. v. Karl*, 199 W.Va. 678, 487 S.E.2d 336 (1997); *Dodrill v. Nationwide Mut. Ins. Co.*, 201 W.Va. 1, 491 S.E.2d 1 (1996); *McCormick v. Allstate Ins. Co.*, 197 W.Va. 415, 475 S.E.2d 507 (1996); *State ex rel. Motorists Mut. Ins. Co. v. Broadwater*, 192 W.Va. 608, 453 S.E.2d 591 (1994); *Berry v. Nationwide Mut. Fire Ins. Co.*, 181 W.Va. 168, 381 S.E.2d 367 (1989). As a result of the historical lack of distinction between the two phrases as well as the format in which the District Court certified the question to this Court, we see no need to deviate from our traditional practice of using the two phrases interchangeably.

stayed pending resolution of the underlying contract claim. To support its position, Allstate asserts that the "general business practice" component, required by statute to be established by plaintiffs in unfair settlement practices cases, involves the submission of evidence to an extent well beyond that contemplated by the underlying claim for underinsured motorist coverage.[6] Accordingly, bifurcation and a stay are required because such evidence would otherwise be prejudicial to the underlying claim. The Lights, on the other hand, contend that bifurcation and a stay in the instant context should not be mandatory, because bifurcation ordinarily rests within the discretion of the trial court. More specifically, the Lights suggest that, inasmuch as they are suing their own insurer on both claims, the question of "insurance" is present throughout the litigation. Therefore, bifurcation and a stay are unwarranted.[7]

6. The bad faith statute, W.Va.Code § 33–11–4(9) [1985], provides in relevant part:

(9) Unfair claim settlement practices. No person shall commit or perform with such frequency as to indicate a general business practice any of the following:

(a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

(c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when such insureds have made claims for amounts reasonably similar to the amounts ultimately recovered;

(h) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

(i) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of the insured;

(j) Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made;

(k) Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

(l) Delaying the investigation or payment of claims by requiring an insured, claimant or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

(m) Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

(n) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;

(o) Failing to notify the first party claimant and the provider(s) of services covered under accident and sickness insurance and hospital and medical service corporation insurance policies whether the claim has been accepted or denied and if denied, the reasons therefor, within fifteen calendar days from the filing of the proof of loss: Provided, That should benefits due the claimant be assigned, notice to the claimant shall not be required: Provided, however, That should the benefits be payable directly to the claimant, notice to the health care provider shall not be required. If the insurer needs more time to investigate the claim, it shall so notify the first party claimant in writing within fifteen calendar days from the date of the initial notification and every thirty calendar days, thereafter; but in no instance shall a claim remain unsettled and unpaid for more than ninety calendar days from the first party claimant's filing of the proof of loss unless there is, as determined by the insurance commissioner, (1) a legitimate dispute as to coverage, liability or damages; or (2) if the claimant has fraudulently caused or contributed to the loss. In the event that the insurer fails to pay the claim in full within ninety calendar days from the claimant's filing of the proof of loss, except for exemptions provided above, there shall be assessed against the insurer and paid to the insured a penalty which will be in addition to the amount of the claim and assessed as interest on such at the then current prime rate plus one percent. Any penalty paid by an insurer pursuant to this section shall not be a consideration in any rate filing made by such insurer.

7. In initially denying Allstate's motion to bifurcate, the District Court reasoned:

Upon initial review, the issue presented seems to have been previously resolved by this Court. In *State ex rel. State Farm Fire & Casualty Co. v. Madden*, 192 W.Va. 155, 451 S.E.2d 721 (1994), this Court addressed the issue of bifurcation and the staying of a bad faith claim in the context of a third-party action against an insurer. In *Madden*, the plaintiff brought an action against a restaurant as a result of a slip and fall incident. Subsequently, via the filing of an amended complaint, the restaurant's insurance carrier, State Farm, was joined in the action. The plaintiff asserted a claim against State Farm for unfair settlement practices. Thereafter, the *Madden* plaintiff filed requests for discovery seeking State Farm's claim file material relating to the accident in question, as well as other information. State Farm filed a writ of prohibition with this Court seeking to bifurcate the bad faith claim from the underlying claim against the restaurant.[8] The trial court denied State Farm's request.

■ We clearly articulated in *Madden* that the right to order separate trials is within the sound discretion of the trial court. *See Bowman v. Barnes*, 168 W.Va. 111, 282 S.E.2d 613 (1981). *See also* West Virginia Rules of Civil Procedure, Rule 42(c).[9] We further held in *Madden* that "the circuit court decision is binding 'in the absence of a clear showing of abuse of such discretion and

> In this case, Plaintiffs are suing their own insurer on the underlying claim which is a contract claim as well as suing them for unfair settlement practices. This is not a case where Plaintiffs are suing an insured tortfeasor for personal injury and then are suing the tortfeasor's insurance company for unfair settlement practices. The latter is the type of case in which the fact of insurance coverage could be unduly prejudicial[.]

8. State Farm also sought a stay of discovery.

9. Rule 42(c) states:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by Article III, Section 13 of the West Virginia Constitution or as given by a statute of this State.

in the absence of a clear showing of prejudice to any one or more of the parties.'" *Madden*, 192 W.Va. at 160, 451 S.E.2d at 726, quoting *Holland v. Joyce*, 155 W.Va. 535, 185 S.E.2d 505 (1971). *Madden* additionally observed that "the overriding concern in deciding whether to order separate trials is providing a fair and impartial trial to all litigants." *Madden*, 192 W.Va. at 160, 451 S.E.2d at 726, citing *Bennett v. Warner*, 179 W.Va. 742, 372 S.E.2d 920 (1988). This Court ultimately held that "[t]he prejudice inherent in allowing the personal injury claim against [the restaurant] to be tried before the same jury as the additional claims against State Farm ... is such that the circuit court's refusal to bifurcate was a clear abuse of discretion." *Madden*, 192 W.Va. at 160, 451 S.E.2d at 726.[10] Implicit in our holding in *Madden* was that bifurcation and stay of a third-party bad faith claim against an insurer are mandatory. Thus, *Madden* established an exception to the discretion provided to trial courts for bifurcation under Rule 42(c).

In the instant case, the certified question from the District Court asks whether the *Madden* analysis extends to first-party bad faith actions against an insurer. A recent decision by the United States Court of Appeals for the Fourth Circuit, *Maher v. Conti-*

10. This Court held in syllabus point 3 of *Madden* that "[t]o the extent *Jenkins v. J.C. Penney Cas. Ins. Co.*, 167 W.Va. 597, 280 S.E.2d 252 (1981), *Davis v. Robertson*, 175 W.Va. 364, 332 S.E.2d 819 (1985), *Robinson v. Continental Cas. Co.*, 185 W.Va. 244, 406 S.E.2d 470 (1991), or *Russell v. Amerisure Ins. Co.*, 189 W.Va. 594, 433 S.E.2d 532 (1993) imply that an action against an insurer for bad-faith and unfair settlement practices cannot be joined in the same complaint as the underlying personal injury suit against the insured, they are overruled." Since our decision in *Madden* it has been assumed that joinder of bad faith claims is proper in third-party and first-party causes of action against insurers. However, *Madden* did not expressly overrule our decision in *Thompson v. West Virginia Essential Property Ins. Ass'n*, 186 W.Va. 84, 411 S.E.2d 27 (1991), wherein this Court held that a first-party bad faith claim could not be brought until the underlying case has been resolved. We make explicit today that syllabus point 3 of *Madden* has overruled the language in *Thompson* and any other decision by this Court suggesting a bad faith claim against an insurer cannot be initiated until the underlying action has been resolved.

*nental Cas. Co.,* 76 F.3d 535 (4th Cir.1996), interpreted *Madden.* The Fourth Circuit's *Maher* opinion concluded that the *Madden* analysis was applicable to a first-party bad faith action.[11] *Maher* reasoned that "[a]lthough the underlying claim in the instant case ... is a 'first-party' action by Maher against his own insurer instead of a third-party action by an outside claimant, the sweeping, unequivocal language used in *Madden* convinces us that it would apply with equal force here." *Maher,* 76 F.3d at 544.

We believe the *Maher* opinion incorrectly interpreted *Madden.* In a third-party action against an insurer, the third-party also has a claim proceeding directly against an insured tortfeasor. Therefore, the primary concern in *Madden* was the potential prejudice that stems from a jury learning that an insurance carrier may assume responsibility for a verdict awarded against the tortfeasor. *Madden* was decided under the much maligned notion that the mere mentioning of insurance to a jury was prejudicial error.[12] More recently however, we reexamined the issue of prejudice stemming from the knowledge of insurance in *Reed v. Wimmer,* 195 W.Va. 199, 465 S.E.2d 199 (1995). *Reed* illustrates that the prevailing view among legal commentators indicates that evidence of insurance is rarely prejudicial:

"[T]he underlying soundness of the general rule forbidding disclosure of the fact of insurance has been the object of scathing criticism.... Its costs include extensive and unnecessary arguments, reversals, and retrials stemming from elusive questions of prejudice and good faith. This state of affairs might be tolerable if the revelation of insurance were truly fraught with prejudice. But, ... most jurors probably presuppose the existence of liability insurance anyway, and the heart of the policy nondisclosure is surrendered when jurors are examined about their con-

nection with insurance companies. Consequently, the extent to which evidence of coverage or its absence is prejudicial is unclear. Even the direction in which such prejudice might work is obscure.' "

*Id.* at 208, 465 S.E.2d at 208 (quoting McCormick on Evidence § 210, at 597 (3rd ed.1984)) (footnotes omitted); *accord* 1 Franklin D. Cleckley, Handbook on Evidence for West Virginia Lawyers § 4–11(A), at 429–30 (3rd ed.1994) (noting "the tendency now is to take a less serious view of the disclosure of the existence of liability insurance" and that "it is difficult to perceive how the mere mentioning of insurance could ever be reversible error").

Syllabus point 2 of *Reed* provides for a presumption of protection from prejudice in favor of the insured when the issue of insurance is introduced at trial and specific guidelines are followed:

An insured is presumed to be protected from undue prejudice from the admission of evidence of insurance at trial if the following requirements are met: (1) the evidence of insurance was offered for a specific purpose other than to prove negligence or wrongful conduct; (2) the evidence was relevant; (3) the trial court made an on-the-record determination under Rule 403 of the West Virginia Rules of Evidence that the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice; and (4) the trial court delivered a limiting instruction advising the jury of the specific purpose(s) for which the evidence may be used.

Furthermore, in syllabus point 3 of *Reed* we clarified the standard for determining whether prejudice results from the erroneous interjection of insurance during a trial:

Where evidence of insurance is wrongfully injected at a trial, its prejudicial effect will be determined by applying the

---

**11.** *See also Smith v. Westfield Ins. Co.,* 932 F.Supp. 770 (S.D.W.Va.1996).

**12.** *See, e.g.,* Syl. pt. 6, *Flanagan v. Mott,* 145 W.Va. 220, 114 S.E.2d 331 (1960) (" 'The jury should not in any manner be apprised of the fact that the defendant is protected by indemnity insurance, and such action on the part of plaintiff

or his counsel will ordinarily constitute reversible error, notwithstanding the court may instruct the jury not to consider the same in arriving at a verdict.' Point 1, Syllabus, *Wilkins v. Schwartz,* 101 W.Va. 337[, 132 S.E. 887 (1926) ].").

standard set out in Rule 103(a) of the West Virginia Rules of Evidence. In addition to the possibility that the jurors are already aware of the existence of insurance, the trial court should consider the relative strength of each of the parties['] cases or the lack of it, whether the jury was urged by counsel or the witness to consider insurance in deciding the issue of negligence or damages, whether the injection of insurance was designed to prejudice the jury, whether the mention of insurance was in disregard of a previous order, and whether a curative instruction can effectively dissipate any resulting prejudice.

*See State ex rel. State Farm Mut. Auto. Ins. Co. v. Canady,* 197 W.Va. 107, 475 S.E.2d 107 (1996).

*Reed* has meticulously enunciated the standard for determining prejudice when insurance is mentioned to a jury, which is of fundamental concern in a third-party bad faith action. However, the instant first-party proceeding does not require that we revisit *Madden* as there is a clear distinction between a first-party and a third-party bad faith claim.

In a first-party bad faith action the insurer is actually the named defendant in both the underlying claim and the bad faith claim. Thus, the primary concern of disclosing the existence of insurance which was articulated in *Madden* does not exist in a first-party bad faith action. This first-party/third-party distinction however, does not mean that bifurcation should never occur. Instead, the inquiry becomes whether trial courts should be permitted to exercise discretion on a case-by-case basis in determining whether to bifurcate and stay a first-party bad faith claim. In analyzing how other jurisdictions resolve the issue of bifurcation of first-party bad faith actions against insurers,[13] we have found almost unanimity in determining that the issue is a discretionary matter for trial courts. All federal courts, when applying federal law, apply Rule 42(b) of the Federal Rules of Civil Procedure when deciding whether to bifurcate and stay a first-party bad faith claim against an insurer.[14] Likewise, the majority of state courts reviewing the question have permitted the issues of bifurcation and a stay to be solely within the discretion of the trial court.[15] In contrast, we have found only one jurisdiction holding that it was mandatory to bifurcate and stay first-party bad faith actions against insurers, pending the outcome of the underlying claim.

---

**13.** We hasten to note that some jurisdictions do not provide for a statutory bad faith action, but recognize, instead, the common law bad faith claim against an insurer. Statutory bad faith claims include the common law bad faith claim, in addition to other practices not recognized under the common law action. *See infra* note 15 for state cases finding bifurcation to be discretionary.

**14.** *See, e.g., O'Malley v. U.S. Fidelity and Guar. Co.,* 776 F.2d 494 (5th Cir.1985); *Deland v. Old Republic Life Ins. Co.,* 758 F.2d 1331 (9th Cir. 1985); *Cook v. United Service Auto. Ass'n.,* 169 F.R.D. 359 (D.Nev.1996); *American Nat. Red Cross v. Travelers Indem. Co. of Rhode Island,* 924 F.Supp. 304 (D.D.C.1996); *Sculimbrene v. Paul Revere Ins. Co.,* 925 F.Supp. 505 (E.D.Ky.1996); *Doylestown Elec. Supply Co. v. Maryland Cas. Ins. Co.,* 942 F.Supp. 1018 (E.D.Pa.1996); *Polizzi Meats, Inc. v. Aetna Life & Cas. Co.,* 931 F.Supp. 328 (D.N.J.1996); *South Hampton Refining Co. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 875 F.Supp. 382 (E.D.Tex.1995); *MacFarland v. U.S. Fidelity & Guar. Co.,* 818 F.Supp. 108 (E.D.Pa.1993); *Aetna Cas. & Sur. Co. v. Nationwide Mut. Ins. Co.,* 734 F.Supp. 204 (W.D.Pa. 1989); *Red Cedars, Inc. v. Westchester Fire Ins.*

*Co.,* 686 F.Supp. 614 (E.D.Mich.1988). *See also Kurkierewicz v. Loewen,* 109 F.R.D. 601 (D.Mont. 1986) (third-party action).

**15.** The overwhelming majority of state jurisdictions hold that whether or not to bifurcate and stay a first-party bad faith claim is a discretionary determination for the trial court. *See, e.g., Malta Public School Dist. A and 14 v. Montana Seventeenth Judicial Dist. Court, Phillips County,* 283 Mont. 46, 938 P.2d 1335 (1997); *Allstate Ins. Co. v. Hunter,* 865 S.W.2d 189 (Tex.App.Corpus Christi 1993); *Texas Farmers Ins. Co. v. Cooper,* 916 S.W.2d 698 (Tex.App.-El Paso 1996); *Rubio v. State Farm Fire & Cas. Co.,* 662 So.2d 956 (Fla.App.1995); *Pacheco v. Safeco Ins. Co. of America,* 116 Idaho 794, 780 P.2d 116 (1989); *Mutual of Enumclaw Ins. Co. v. Cox,* 110 Wash.2d 643, 757 P.2d 499 (1988); *Buzzard v. McDanel,* 736 P.2d 157 (Okl.1987); *Morgan v. American Family Mut. Ins. Co.,* 534 N.W.2d 92 (Iowa 1995); *Braddy v. Nationwide Mut. Liability Ins. Co.,* 122 N.C.App. 402, 470 S.E.2d 820 (1996); *Equitable Life Assur. Soc. of the U.S. v. Berry,* 212 Cal.App.3d 832, 260 Cal.Rptr. 819 (1989); *Lynch v. Mid–America Fire & Marine Ins. Co.,* 94 Ill.App.3d 21, 49 Ill.Dec. 567, 418 N.E.2d 421 (4 Dist.1981).

*See Corrente v. Fitchburg Mutual Fire Insurance Co.,* 557 A.2d 859 (R.I.1989).

■ We believe that *Madden* should not be extended to first-party bad faith actions against insurers. We hold, therefore, that in a first-party bad faith action against an insurer, bifurcation and stay of the bad faith claim from the underlying action are not mandatory. Under Rule 42(c) of the West Virginia Rules of Civil Procedure a trial court, in furtherance of convenience, economy, or to avoid prejudice, may bifurcate and stay a first-party bad faith cause of action against an insurer. Having answered the first and second part of the certified question, we proceed to consider the third part of the certified question.

**B.**

*In a case in which the plaintiffs assert an insurance contract claim for first-party underinsured motorist benefits, and a "bad faith" claim pursuant to the Unfair Claims Settlement Practices Act arising out of the contract claim, is it mandatory, under State ex rel. State Farm Fire & Casualty Co. v. Madden, 192 W.Va. 155, 451 S.E.2d 721 (1994), for the trial court to stay all discovery on the bad faith claim pending resolution of the contract claim?*

■ The third part of the District Court's certified question concerns whether or not *Madden* has made it mandatory that discovery on the first-party bad faith claim be stayed pending resolution of the underlying claim. We do not interpret *Madden* as setting forth a per se rule that discovery must be stayed in all first-party bad faith actions against insurers pending resolution of the underlying claims. As a general matter, whenever courts bifurcate and stay bad faith claims against insurers, the *trend* is to order a stay of discovery on the bad faith claim. *See In re Bergeson,* 112 F.R.D. 692 (D.Mont. 1986); *Bartlett v. John Hancock Mut. Life Ins. Co.,* 538 A.2d 997 (R.I.1988); *Allstate Insurance Co. v. Swanson,* 506 So.2d 497 (Fla.Dist.Ct.App.1987). Our review of the law in this area, discerns no rationale for staying discovery in a bad faith claim. That is, in bad faith actions, where bifurcation is ordered, courts appear to automatically stay discovery without any logical or meaningful explanation.

■ Despite this tendency, courts in cases which did not involve bad faith claims against insurers, have permitted discovery to proceed although the claims were bifurcated. *See Krueger v. New York Telephone Co.,* 163 F.R.D. 446 (S.D.N.Y.1995); *Paradigm Sales, Inc. v. Weber Marking Systems, Inc.,* 880 F.Supp. 1247 (N.D.Ind.1995); *In re Innotron Diagnostics,* 800 F.2d 1077 (Fed.Cir.1986); *Tillery v. Lynn,* 607 F.Supp. 399 (D.C.N.Y. 1985); *Naxon Telesign Corp. v. GTE Information Sys.,* 89 F.R.D. 333 (N.D.Ill.1980); *Alarm Device Mfg. Co. v. Alarm Products International, Inc.,* 60 F.R.D. 199 (E.D.N.Y. 1973). There is no justification to articulate a rule requiring discovery to be stayed in all bad faith actions whenever bifurcation and a stay of the bad faith claim is ordered. *See Handley v. Farm Bureau Mut. Ins. Co.* 467 N.W.2d 247 (Iowa 1991) (permitting discovery to proceed on bad faith claim). The better course is to permit trial courts, when they have ordered bifurcation and a stay of the bad faith claim, to determine on a case-by-case basis whether to stay discovery on a bifurcated bad faith claim. We hold, therefore, that trial courts have discretion in determining whether to stay discovery in a first-party bad faith claim against an insurer that has been bifurcated and stayed. Factors trial courts should consider in determining whether to stay discovery when bifurcation has been ordered in a bad faith action include: (1) the number of parties in the case, (2) the complexity of the underlying case against the insurer, (3) whether undue prejudice would result to the insured if discovery is stayed, (4) whether a single jury will ultimately hear both bifurcated cases, (5) whether partial discovery is feasible on the bad faith claim and (6) the burden placed on the trial court by imposing a stay on discovery. The party seeking to stay discovery on the bad faith claim has the burden of proof on the issue.

**IV.**

**CONCLUSION**

For the reasons explained in the body of this opinion, we conclude that, in a first-party

bad faith action against an insurer, bifurcation and a stay of the bad faith claim, from the underlying action, are not mandatory. Under Rule 42(c) of the West Virginia Rules of Civil Procedure a trial court, in furtherance of convenience, economy, or to avoid prejudice, may bifurcate and stay a first-party bad faith cause of action against an insurer. Furthermore, we hold that trial courts have discretion in determining whether to stay discovery in a first-party bad faith claim against an insurer that has been bifurcated and stayed.

Certified Question Answered.

McCUSKEY, Justice, dissenting:
(Filed July 27, 1998)

This Court has clearly and unambiguously ruled that it is mandatory for the trial court to bifurcate and stay third-party statutory bad faith insurance claims until the resolution of the underlying personal injury claim. *State ex rel. State Farm Fire & Cas. Co. v. Madden*, 192 W.Va. 155, 451 S.E.2d 721 (1994). The Fourth Circuit Court of Appeals, in *Maher v. Continental Cas. Co.*, 76 F.3d 535 (4th Cir.1996), based on the logic of the *Madden* decision, extended the same principle to first-party statutory bad faith claims. Subsequently, the United States District Court for the Northern District of West Virginia, in *State Farm Fire & Cas. Co. v. Kirby*, 919 F.Supp. 939 (N.D.W.Va.1996), observed that recent developments in West Virginia law would allow the plaintiffs to consolidate a first-party statutory bad faith claim against State Farm with their underlying tort claim. The *Kirby* Court found: "The fact that Madden involved a third party claim against an insurer and the claim here is a first party claim is of no consequence." *Id.* at 943 n. 2. Now, by failing to extend its own rule for third-party insurance claims to first-party claims, the majority has taken an illogical step and offered no sound reason for doing so.

The majority decision cites a number of federal district cases and state court cases to convince us that the bifurcation orchestra is actually playing its tune. A careful reading of those cases, however, reveals that the decisions either (1) ruled that the lower court had not abused its discretion by ordering bifurcation and stay of the bad faith claim, or (2) dealt not with statutory bad faith claims, but with claims for common law bad faith, which, in the third-party context, have been recently held by this Court to be nonexistent in West Virginia, *Elmore v. State Farm*, 202 W.Va. 430, 504 S.E.2d 893 (1998). To the extent that these decisions did not address the issue of whether bifurcation and stay of proceedings on a first-party statutory bad faith claim should be mandatory, they are not persuasive here.

Of course, the more important issue is not whether the majority is play off key (because it clearly is), but whether there is a good reason for West Virginia to adopt a rule different from its own current rule in third-party insurance actions.

The compelling advantages of mandatory bifurcation and stay of discovery on first-party statutory bad faith claims are (1) cost savings to both parties, with increased incentive to settle before trial, (2) avoidance of burdensome and complicated discovery problems with insurance claims files, (3) avoidance of unfair prejudice to a litigant which arises when contract and bad faith claims are combined, and (4) avoidance of the possibility of the disqualification of trial counsel because of inherent conflict of interest problems. Gregory S. Clayton, *Bifurcation of Breach of Contract and Bad Faith Claims in First–Party Insurance Litigation*, 21 Vt. B.J. & L. Dig. 35 (1995). These arguments apply with equal force to first-party actions as they do to third-party actions, and most of the advantages of bifurcation and stay apply to plaintiffs as well as defendants; thus, there is no good reason to depart from our current third-party rule.

The majority pins its refusal to apply this Court's third-party rule to first-party statutory bad faith actions on the fact that mentioning insurance to a jury can be prejudicial in a third-party action, whereas such prejudice is not present in first-party actions since both the contract and bad faith claims are made directly against the insurer. The majority, however, then goes on to undercut its own argument by concluding that there real-

ly is little validity to the "notion that the mere mentioning of insurance to a jury [is] prejudicial error."

This case is not insignificant. It marks a clear retreat from this Court's decisions in recent years which recognize that statutory bad faith claims are complicated and unique and should not be mixed with standard insurance contract claims. West Virginia is one of only a few states in the nation where the judiciary, rather than the legislature, has created a private cause of action for violation of an unfair claims settlement practices statute. The majority's ruling will permit 62 circuit court judges to impose their own personal, judicial philosophy on whether this type of claim should be bifurcated and discovery stayed pending resolution of the underlying contract claim. This invites forum shopping and the constant burdening of this Court, which will be called upon, case after case, to determine whether a trial judge properly decided or declined to bifurcate the claims and stay discovery. I am quite content to be a "one-man band" when the majority's decision, with its undesirable results, is so obviously out of tune.