IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2025 Term

**FILED**

**June 10, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 24-27

_____

ELAINE NEIDIG, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED
Plaintiff Below, Petitioner,

v.

VALLEY HEALTH SYSTEM,
Defendant Below, Respondent.

_____

Certified Question from the
United States Court of Appeals for the Fourth Circuit
The Honorable James Andrew Wynn, United States Circuit Judge
Civil Action No. 22-2227

CERTIFIED QUESTION ANSWERED

_____

Submitted:   February 18, 2025
Filed:   June 10, 2025

Anthony J. Majestro, Esq.
Powell & Majestro PLLC
Charleston, West Virginia
and
Steven G. Skinner, Esq.
Skinner Law Firm
Charles Town, West Virginia
Counsel for Petitioner

Charles F. Printz, Esq.
J. Tyler Mayhew, Esq.
Bowles Rice LLP
Charleston, West Virginia
Counsel for Respondent

CHIEF JUSTICE WOOTON delivered the Opinion of the Court.

JUSTICE WALKER concurs and reserves the right to file a separate opinion.

JUSTICE ARMSTEAD dissents and reserves the right to file a separate opinion.

JUSTICE TRUMP, deeming himself disqualified, did not participate in the decision of this case.

JUDGE PERRI JO DECHRISTOPHER sitting by temporary assignment.

**SYLLABUS BY THE COURT**

1. "A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court." Syl. Pt. 1, *Light v. Allstate Ins. Co.*, 203 W. Va. 27, 506 S.E.2d 64 (1998).

2. "Where the issue on an appeal . . . is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, in part, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

3. "The Medical Professional Liability Act, W. Va. Code §§ 55-7B-1 to -12, applies only when two conditions are satisfied, that is, when a plaintiff (1) sues a 'health care provider' or 'health care facility' for (2) 'medical professional liability' as those terms are defined under the Act. These are separate and distinct conditions. If either of these two conditions is lacking, the Act does not apply." Syl. Pt. 5, *State ex rel. W. Va. Div. of Corr. & Rehab. v. Ferguson*, 248 W. Va. 471, 889 S.E.2d 44 (2023).

4. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

5. "'Statutes in derogation of the common law are strictly construed.' Syllabus Point 1, *Kellar v. James*, 63 W. Va. 139, 59 S.E. 939 (1907)" Syl. Pt. 3, *Phillips v. Larry's Drive-In Pharm. Inc.*, 220 W. Va. 484, 647 S.E.2d 920 (2007).

6. The Medical Professional Liability Act does not apply to a suit against a health care provider or health care facility when the plaintiff claims only economic damages and disclaims all liability based on physical injury, emotional injury, or death.

**WOOTON, Chief Justice:**

Pursuant to West Virginia Code section 51-1A-6(a)(1) (2016), the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") certified the following question to this Court in its January 9, 2024, order: "Whether a plaintiff's claims can fall under the West Virginia Medical Professional Liability Act if the plaintiff disclaims any form of physical or emotional injury." *Neidig v. Valley Health Sys.*, 90 F.4th 300, 302 (4th Cir. 2024). To align with the language of the Act, pursuant to West Virginia Code section 51-1A-4 (2016) we reformulate the certified question as follows: Does the Medical Professional Liability Act apply to a suit against a health care provider or health care facility when the plaintiff claims only economic damages and disclaims all liability based on physical injury, emotional injury, or death?

Viewing the West Virginia Medical Professional Liability Act ("MPLA" or "the Act") in its entirety, and in particular the statutory definition of "medical professional liability" as contained in West Virginia Code section 55-7B-2(i), the Act requires a predicate claim arising from the death or injury of a person. Accordingly, where a plaintiff seeks redress only for economic harm and specifically disclaims any form of physical or emotional injury, the Medical Professional Liability Act does not apply. We therefore answer the reformulated certified question in the negative.

1

## I. Facts and Procedural Background

According to the Fourth Circuit's order of certification, the facts are relatively undisputed. Petitioner Elaine Neidig ("Ms. Neidig" or "the petitioner") had three mammograms at respondent Valley Health System's ("Valley Health" or "respondent")[1] Outpatient Diagnostic Center at Winchester Medical Center in 2016, 2017, and 2019. In 2019 the Food and Drug Administration determined that some of the mammograms performed at this facility had "image quality deficiencies" that posed a "serious risk to human health."

The petitioner received a Patient and Referring Healthcare Provider Notification ("PPN") letter from respondent on December 16, 2019, notifying her of the quality issues with mammograms performed at Winchester Medical Center between June 20, 2017, and August 31, 2019.[2] The PPN informed the petitioner of the "recommended actions for [the recipient] to take" depending on the date of her last mammogram.

On August 3, 2022, the petitioner brought a putative class action lawsuit in the Circuit Court of Jefferson County, West Virginia, against Valley Health. The complaint alleged that Valley Health advertised that it "is proud to offer the latest technology in breast

---

[1] Respondent operates Winchester Medical Center and six other hospitals.

[2] Winchester Medical Center participates in the Mammography Accreditation Program governed by the American College of Radiology. The Center temporarily lost its accreditation to perform mammography, but its accreditation has since been reinstated.

2

imaging, including 3D Mammography, Breast Ultrasound, Breast MRI and Molecular Breast Imaging (BGSI)." Further, Valley Health advertised "[t]he new, free-standing Valley Health Cancer Center has a dedicated Breast Center, which houses a comprehensive program for our patients . . . . The Breast Center is also conveniently located 100 steps away from the Winchester Medical Center Diagnostic Center." Per the complaint, "[the petitioner initially] chose to go to Winchester Medical for [a] mammogram based on the marketing and advertising of Valley Health into West Virginia." According to the complaint, "Winchester Medical Center, during the dates in question, represented itself as an accredited mammography center under the Mammography Quality Standards Act ("MQSA")"; "represented itself as being able to perform proper and correct mammography examinations"; and further alleged that, "[b]ut for the above representations, [the petitioner] would not have had Winchester Medical Center perform her mammograms."

The complaint alleged that "[i]n July 2019, federal accreditation inspectors found that Winchester Medical staff were not accurately positioning or compressing women's breasts during mammograms[]" and "[t]his resulted in the Food and Drug Administration ("FDA") declaring that select mammograms performed by Winchester Medical Center had 'serious image quality deficiencies,' and that these deficiencies were a 'serious risk to human health.'" The petitioner alleged that the PPN confirms that "[Valley Health] adopted the view that the mammograms performed between June 20, 2017 and August 31, 2019, would be of questionable accuracy and quality" and that "[t]he mammograms provided to [the petitioner] and others were of different, deficient, inferior

3

and lesser value compared to what [Valley Health] had represented them to be." According to the complaint, "[d]espite the fact that [the petitioner] paid the market rate for the mammograms, the mammograms were worthless[]" and "[Valley Health] never reimbursed, refunded, or rebated the costs paid by [the petitioner]."

The complaint asserted consumer protection claims for unfair and deceptive acts and practices pursuant to the West Virginia Consumer Credit Protection Act ("CCPA"); unjust enrichment; and breach of contract based on Valley Health's provision of mammography services that were "different, deficient, inferior, and of lesser value" than promised. The complaint did not claim damages for any physical or emotional injury or death to the petitioner or to any of the putative class members. The petitioner's complaint sought the following damages: actual damages; statutory damages for violation of the CCPA; the petitioner's cost of litigation; compensatory damages for the unjustly depreciated value of purchased mammograms; disgorgement of wrongfully obtained and retained profits; contract damages; and such other relief as the court deemed just and proper.

Respondent removed the case to the United States District Court for the Northern District of West Virginia and moved to dismiss the complaint, arguing that the petitioner failed to comply with the pre-suit notice requirements of the MPLA and that the complaint was barred by the MPLA's two-year statute of limitations. In response, the petitioner argued that her claim was a consumer claim pursuant to the CCPA's bar against

4

unfair and deceptive practices in the conduct of trade or commerce.[3] In addition, she contended that her claim was for an economic injury to which the MPLA did not apply; more precisely, that her claim was not based on an "injury of a person" as required by the MPLA.

After considering the arguments of the parties, the United States District Court for the Northern District of West Virginia ("district court") concluded that the petitioner's claims fell within the MPLA's statutory framework.[4] Since the complaint was filed beyond the MPLA's statute of limitations, the district court granted respondent's motion to dismiss on statute of limitations grounds. In so ruling, the district court found that the West Virginia Legislature has defined "medical professional liability" broadly and

---

[3] The CCPA definition of "unfair or deceptive acts or practices" includes:

> (E) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;
>
> . . . .
>
> (G) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model if they are of another;

W. Va. Code § 46A-6-102(7) (2023).

[4] In dismissing the complaint, the district court relied on the second sentence of West Virginia Code section 55-7B-2(i), which provides "[i]t also means other claims that may be contemporaneous to or related to the alleged tort or breach of contract or otherwise provided, all in the context of rendering health care services."

5

that "[a]lthough [the petitioner's] claims are for unfair and deceptive acts and practices, breach of contract and unjust enrichment, she may not 'avoid the MPLA with creative pleading[,]'" referencing this Court's opinion in *State ex rel. West Virginia University Hospitals, Inc. v. Scott*, 246 W. Va. 184, 193, 866 S.E.2d 350, 359 (2021).

The petitioner timely appealed the dismissal order to the Fourth Circuit. In her appeal the petitioner again argued that this is a consumer case, not a medical malpractice case. The petitioner disclaimed any physical injury, maintained that the damages she sustained were strictly economic, and therefore contended that her claims fall outside of the scope of the MPLA.

The Fourth Circuit reasoned that the question before the court was whether the petitioner's "claims—although styled as consumer-protection claims for unfair and deceptive acts and practices, unjust enrichment, and breach of contract—nevertheless fall within the ambit of the [MPLA]." Accordingly, pursuant to the Uniform Certification of Questions of Law Act, West Virginia Code §§ 51-1A-1 to -13 (2016), [5] the Fourth Circuit asked this Court to exercise its discretion to answer the following unsettled question of

---

[5] This Court's review of a certified question is authorized by West Virginia Code section 51-1A-3 (1996) which provides:

> The Supreme Court of Appeals of West Virginia may answer a question of law certified to it by any court of the United States . . . if the answer may be determinative of an issue in a pending cause in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state.

law: "[w]hether a plaintiff's claims can fall under the West Virginia Medical Professional Liability Act if the plaintiff disclaims any form of physical or emotional injury." *Neidig*, 90 F.4th at 302. By order entered August 20, 2024, we accepted the certified question and set this matter for oral argument.[6]

## II. Standard of Review

It is well established that "[a] de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court." Syl. Pt. 1, *Light v. Allstate Ins. Co.*, 203 W. Va. 27, 506 S.E.2d 64 (1998); *accord* Syl. Pt. 1, *Bower v. Westinghouse Elec. Corp.*, 206 W. Va. 133, 522 S.E.2d 424 (1999) ("This Court undertakes plenary review of legal issues presented by certified question from a federal district or appellate court."). Similarly, "[w]here the issue on an appeal . . . is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, in part, *Chrystal R.M. v. Charlie A.L.*, 194 W.

---

[6] Respondent asked this Court to use its discretion as afforded by West Virginia Code section 51-1A-4 and our established jurisprudence to reformulate the certified question as follows:

> Whether a claim that arises from "health care" rendered to a "patient," and that necessarily depends upon proof that a "health care provider" or "health care facility" failed to follow the accepted standard of care, falls under the West Virginia Medical Professional Liability Act, regardless of how it has been pled or the type of damages being sought.

We decline to adopt respondent's proposed reformulated question and instead adopt the reformulated question discussed *supra*, which follows the language of the "medical professional liability" definition.

Va. 138, 459 S.E.2d 415 (1995). Guided by these standards of review, we address the certified question before us.

### III. Discussion

This Court has the power to reformulate certified questions. *See* W. Va. Code § 51-1A-4 ("The Supreme Court of Appeals of West Virginia may reformulate a question certified to it."). *See also* Syl. Pt. 3, in part, *Kincaid v. Mangum*, 189 W. Va. 404, 432 S.E.2d 74 (1993) ("When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under . . . the Uniform Certification of Questions of Law Act found in W. Va. Code, 51-1A-1, *et seq*. . . ."). Accordingly, we reformulate the certified question presented by the Fourth Circuit as follows: Does the Medical Professional Liability Act apply to a suit against a health care provider or health care facility when the plaintiff claims only economic damages and disclaims all liability based on physical injury, emotional injury, or death?

Medical professional liability actions are governed by the MPLA. *See, e.g*., W. Va. Code § 55-7B-6(a) (stating, in relevant part, that "no person may file a medical professional liability action against any health care provider without complying with the provisions of this section"); *State ex rel. Morgantown Operating Co., LLC v. Gaujot*, 245 W. Va. 415, 421, 859 S.E.2d 358, 364 (2021) ("[T]he MPLA applies to all actions alleging medical professional liability as that term is defined in the MPLA[.]" (emphasis omitted)).

Indeed, this Court has recognized that medical professional liability is one of the two conditions that must exist for the MPLA to apply. *See* Syl. Pt. 5, *State ex rel. W. Va. Div. of Corr. & Rehab. v. Ferguson*, 248 W. Va. 471, 889 S.E.2d 44 (2023) ("The Medical Professional Liability Act, W. Va. Code §§ 55-7B-1 to -12, applies only when two conditions are satisfied, that is, when a plaintiff (1) sues a 'health care provider' or 'health care facility' for (2) 'medical professional liability' as those terms are defined under the Act. These are separate and distinct conditions. If either of these two conditions is lacking, the Act does not apply."). The MPLA defines "medical professional liability" as

> any liability for damages resulting from the *death or injury of a person* for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient. It also means other claims that may be contemporaneous to or related to the alleged tort or breach of contract or otherwise provided, all in the context of rendering health care services.

W. Va. Code § 55-7B-2(i) (emphasis added).

The definition of "medical professional liability" is divided into two parts. In *Scott* this Court discerned between anchor claims, described in the first sentence of the statute, and ancillary claims, described in the second. 246 W. Va. at 194, 866 S.E.2d at 360. If no claim espoused by the plaintiff meets the statutory criteria of an anchor claim, it follows that no ancillary claim may be appended to it. *See id.* ("[To bring ancillary claims under the MPLA,] you must have the anchor claim (fitting the definition of 'health care') and then make the showing that the ancillary claims are (1) contemporaneous with or

9

related to that anchor claim; and (2) despite being ancillary, are still in the context of rendering health care.").

We have had numerous occasions to analyze and discuss the Act and its provisions in the context of whether the claims asserted fit the statutory definition of "health care"[7] as an anchor claim, as well as whether the broader language "all in the context of rendering health care" was consistent with asserted ancillary claims. *See e.g.*, *Scott*, 246 W. Va. at 193-96, 866 S.E.2d at 359-62. Neither party disputes that this claim fits the "health care" portion of an anchor claim, nor do we. But each of our prior cases has contained at least one *other* claim of bodily injury, emotional injury, or death that resulted

---

[7] West Virginia Code § 55-7B-2(e) defines "health care" as:

(1) Any act, service, or treatment provided under, pursuant to, or in the furtherance of a physician's plan of care, a health care facility's plan of care, medical diagnosis, or treatment;

(2) Any act, service, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider or person supervised by or acting under the direction of a health care provider or licensed professional for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement, including, but not limited to, staffing, medical transport, custodial care, or basic care, infection control, positioning, hydration, nutrition, and similar patient services; and

(3) The process employed by health care providers and health care facilities for the appointment, employment, contracting, credentialing, privileging, and supervision of health care providers.

from the health care provider's negligent care; accordingly, the requisite damages portion of the statute was satisfied. Had the petitioner in this case claimed a missed diagnosis or emotional distress alongside her breach of contract claim, the parties would not be before this Court or any other arguing whether the Act applied to any of her claims. To be clear, we do not here decide that *each* of a plaintiff's claims must be based upon bodily injury or death; instead, we determine whether the Act may be applied in the *total absence* of *any* claim based upon bodily injury or death.

Because we have never considered the MPLA's application to a case with no claim for physical or emotional injury or death, we find our Act-specific precedent on the scope of "health care" of no practical use here as it pertains to a wholly separate portion of the statute. Thus, the reformulated certified question presents an issue of first impression: Does the Medical Professional Liability Act apply to a suit against a health care provider or health care facility when the plaintiff claims only economic damages and disclaims all liability based on physical injury, emotional injury, or death?

Addressing the operative statutory language, defining an anchor claim for medical professional liability as "any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient," the petitioner equates "injury of a person" with personal injury. She contends that, by defining "medical professional liability," in relevant part, as liability for "the death or

11

injury *of a person*," the Legislature expressed its intention that the MPLA apply to personal injuries. W. Va. Code § 55-7B-2(i) (emphasis added). By extension, the MPLA has no application to claims for purely economic losses such as those governed by the CCPA. The petitioner maintains that the MPLA does not apply to her claims because she seeks only monetary damages related to her deficient mammograms, i.e., statutory damages for CCPA violations, her cost of litigation, compensatory damages for the depreciated value of her mammograms, disgorgement of wrongfully obtained and retained profits, and contract damages.

Respondent contends that in expressly disclaiming a bodily injury, the petitioner relies on artful pleading to avoid application of the Act, a practice this Court has explicitly condemned as futile, since courts are instructed to apply the Act when the claim asserted is within the Act's scope, regardless of how it is pled. *See* Syl. Pt. 4, *Blankenship v. Ethicon, Inc.*, 221 W. Va. 700, 656 S.E.2d 451 (2007) ("The failure to plead a claim as governed by the Medical Professional Liability Act, W. Va. Code § 55-7B-1, *et seq.*, does not preclude application of the Act. Where the alleged tortious acts or omissions are committed by a health care provider within the context of the rendering of 'health care' as defined by W. Va. Code § 55-7B-2(e) (2006) (Supp. 2007), the Act applies regardless of how the claims have been pled."). However, we disagree that this case may be resolved based on the petitioner's alleged artful pleading. The petitioner's lack of bodily injury or death as a *damage* calls into question whether she has asserted a medical professional liability claim as defined by the Act, which has little to do with the way she pled or labeled

12

her claims. If the petitioner's pleading was indeed strategic to the point of eliminating an entire basis of liability in tort, she has made that choice to her detriment and may not recover those damages in contract, but that does not obviate our need to grapple with the statutory requirements for the Act's application.

Having limited the scope of our analysis to that portion of the statute pertaining to "death or injury to a person," we are asked whether a claim may still fit the definition of an anchor claim when the plaintiff seeks no damages for any physical or emotional injury. Respondent's arguments in this respect are two-fold. First, respondent argues that for breach of contract claims, specifically, death or injury of a person is not a prerequisite to the Act's application. Second, respondent argues that, if death or injury of a person *is* a prerequisite, "injury" encompasses both personal and legal injuries.

Respondent would read the first sentence of the statute as creating one class of Act-applicable claims as "health care"-based[8] liability for damages in tort resulting from the death or injury of a person, and another, second class of Act-applicable claims as

---

[8] Insofar as the statutory definition of "health care" is not at issue, we abbreviate that portion of the statute but do not intend to diminish the nuances of that statutory definition as contrasted with "in the overall context of rendering health care" in the portion of the statute relating to ancillary claims.

"health care"-based liability stemming from a breach of contract that does *not* require the death or injury of a person.[9]

The language at issue is the injection of the additional modifier "for any tort or breach of contract" in the middle of an otherwise straightforward sentence: "any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient." Without it, the relevant portion of the statute would apply the Act to "any liability for damages resulting from the death or injury of a person based on health care services rendered . . . ." But the Legislature specifically included the interjecting claim-specific language and we are bound to give it effect. *See* Syl. Pt. 3, *Meadows v. Wal–Mart Stores, Inc.,* 207 W. Va. 203, 530 S.E.2d 676 (1999) ("A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute.").

_____

[9] Per respondent, the MPLA's definition of "medical professional liability" includes liability for damages resulting from three types of claims: (1) the "death or injury of a person for any tort . . . based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient"; (2) "breach of contract based on health care services rendered, or which should have been rendered, by any health care provider to a patient"; and (3) "other claims that may be contemporaneous to or related to the alleged tort or breach of contract or otherwise provided, all in the context of rendering health care. To the extent that respondent argues that Petitioner's claims may also fall within the "otherwise" portion of the definition of medical professional liability, we observe that the portion of the statute containing the "otherwise" catchall pertains to ancillary claims. Here, our analysis does not reach that question because we conclude that in the absence of a death or personal injury, there is no *anchor* claim to which it may be tethered, and thus need not decide whether Petitioner's claim would fit the statutory definition of an ancillary claim.

14

While the parties both assert that the language is clear and unambiguously skewed to their respective interpretations of the statute, we find the statute's phrasing warrants a closer look, cognizant that "[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Sizemore v. State Farm Gen. Ins. Co.*, 202 W. Va. 591, 596, 505 S.E.2d 654, 659 (1998) (internal quotations and citation omitted). *Accord Hereford v. Meek*, 132 W. Va. 373, 386, 52 S.E.2d 740, 747 (1949). "A statute that is ambiguous must be construed before it can be applied." Syl. Pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992).

"The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). "It has been emphasized repeatedly that '[t]he starting point in every case involving construction of a statute is the language itself.'" *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 584 (1995) (Thomas, J., dissenting), *quoting Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685 (1985). *See also Bullman v. D & R Lumber Co.*, 195 W. Va. 129, 135 n.9, 464 S.E.2d 771, 777 n.9 (1995). We therefore turn first to the language of the statute itself, to answer whether the phrase "resulting from the death or injury of a person" applies only to "torts" or whether the Legislature intended to extend that requirement to "breach of contract."

15

Here, the structure of the statute operates to apply the language "resulting from death or injury of a person" to both tort and breach of contract claims. W. Va. Code § 55-7B-2(i). Use of the disjunctive "or" is the fulcrum of respondent's argument. *See Carper v. Kanawha Banking & Trust Co.*, 157 W. Va. 477, 517, 207 S.E.2d 897, 921 (1974) ("Recognizing the obvious, the normal use of the disjunctive 'or' in a statute connotes an alternative or option to select."). Courts, however, have recognized that "conjunctions are versatile words, which can work differently depending on context." *Pulsifer v. United States*, 601 U.S. 124, 151 (2024). The Legislature's use of "or" between "any tort" and "breach of contract" in West Virginia Code § 55-7B-2(i) simply designates alternative types of claims, it does not convey that the phrase "resulting from death or injury of a person" applies only to "any tort." Upon review, respondent's approach asks this Court to read a word and punctuation into the statute that are not there.

We restate the operative language before examining it: "any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient." W. Va. Code § 55-7B-2(i).

While neither party disputes that *any liability* under this portion of the definition must be "based on health care services rendered, or which should have been rendered," respondent's reading does not apply this fundamental criterion to the "any tort"

16

segment of the definition. *Id.* Respondent's construction requires the insertion of the word "from" and an additional comma, which do not appear in the statute, to clarify that *liability*—whether grounded in contract or tort—must be "based on health care services rendered, or which should have been rendered." Thus, the definitional language would have to be modified to state: any liability for damages resulting *from* the death or injury of a person for any tort or [*from*] breach of contract[,] based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient. Of course, the word "from" and the additional comma do not appear where respondent needs them to appear for its position to be grammatically or legally correct. Modifying a statute in this way to change its meaning exceeds this Court's authority. *See* Syl. Pt. 11 *Brooke B. v. Ray C.*, 230 W. Va. 355, 738 S.E.2d 21 (2013) ("It is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted."); Syl. Pt. 1, *Consumer Advoc. Div. v. Pub. Serv. Comm'n*, 182 W. Va. 152, 386 S.E.2d 650 (1989) ("A statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten.").

This is particularly true here, where the Act is in derogation of the common law. *Phillips v. Larry's Drive-In Pharm. Inc.*, 220 W. Va. 484, 491, 647 S.E.2d 920, 927 (2007) ("[B]y its own terms, the entire MPLA is an act designed to be in derogation of the common law."). We have long held that "'[s]tatutes in derogation of the common law are

17

strictly construed.' Syllabus Point 1, *Kellar v. James,* 63 W. Va. 139, 59 S.E. 939 (1907)."

*Phillips*, 220 W. Va. at 486, 647 S.E.2d at 922, Syl. Pt. 3. Thus, "'[s]tatutes in derogation

of the common law are allowed effect only to the extent clearly indicated by the terms used.

Nothing can be added otherwise than by necessary implication arising from such terms.'

Syllabus Point 3, *Bank of Weston v. Thomas*, 75 W. Va. 321, 83 S.E. 985 (1914)." *Phillips*,

220 W. Va. at 486, 647 S.E.2d at 922, Syl. Pt. 4.

Even though we conclude the statutory language itself demonstrates that

liability based on "death or injury to a person" is a threshold requirement for an MPLA

anchor claim, this conclusion is further bolstered by considering legislative intent as

expressed in the stated purpose for the Act and as reflected in other language used therein.

In the introductory "[l]egislative findings and declaration of purpose" of the

MPLA, the Legislature emphasizes the need to protect West Virginia citizens from, and

compensate them for, injuries or death caused from negligence or incompetence by health

care providers. W. Va. Code § 55-7B-1. This emphasis reflects the Legislature's intent that

the MPLA apply only to medical professional liability actions against health care providers

or health care facilities that involve the death or injury of a person. For example, in this

declaration of purpose, the Legislature recognizes that "[a]s in every human endeavor the

possibility of *injury or death from negligent conduct* commands that protection of the

public served by health care providers be recognized as an important state interest[.]" *Id.*

(emphasis added). The Legislature further pronounces that

18

> Our system of litigation is an essential component of this state's interest in providing adequate and reasonable compensation to those persons who *suffer from injury or death as a result of professional negligence*, and any limitation placed on this system must be balanced with and considerate of the need to fairly compensate patients who have been *injured as a result of negligent and incompetent acts by health care providers*[.]

*Id.* (emphasis added). *See also id.* (observing the "unpredictable nature of *traumatic injury* health care services often results in a greater likelihood of *unsatisfactory patient outcomes*, a higher degree of patient and patient family dissatisfaction and frequent malpractice claims, creating a financial strain on the trauma care system of our state"). Finally, after acknowledging health care providers' need for "reasonably priced and extensive liability coverage," the Legislature lists three purposes for the MPLA, one of which is to provide West Virginia citizens with "[c]ompensation for *injury and death*." *Id.* (emphasis added).[10]

By associating the term "injury" with the term "death," the Legislature shows that it uses "injury" in the context of a physical or personal injury. *See* Syl. Pt. 4, in part, *Wolfe v. Forbes*, 159 W. Va. 34, 217 S.E.2d 899 (1975) ("It is a fundamental rule of construction that, in accordance with the maxim *Noscitur a sociis*, the meaning of a word or phrase may be ascertained by reference to the meaning of other words or phrases with which it is associated."). *See also* Antonin Scalia & Bryan A. Garner, *Reading Law: The*

---

[10] Notably absent from the statement of legislative intent is any expression of a need to protect patients from the economic pitfalls of bad contracts with health care providers – that is, except to the extent contract-based liability has caused an injury or death along the lines of lack of informed consent. *But see supra* note 9 regarding ancillary claims.

*Interpretation of Legal Texts* 197 (2012) (commenting that [a]lthough most associated-words cases involve listings . . . [a]n association is all that is required."). In this regard, it is noteworthy that pursuant to the MPLA, the term "injury" is synonymous with "medical injury" and both terms are defined as "*injury or death* to a patient arising or resulting from the rendering of or failure to render health care." W. Va. Code § 5-7B-2(h) (emphasis added) (defining "injury" and "medical injury").[11]

The association of "injury" with "death" is repeated throughout the Act. *See, e.g.*, W. Va. Code § 55-7B-3(a) (establishing the "necessary elements of proof that an *injury or death* resulted from the failure of a health care provider to follow the accepted standard of care" (emphasis added); *Id.* at -3(a)(2) (requiring proof that a failure to follow the accepted standard of care "was a proximate cause of the *injury or death*" (emphasis added)); *Id.* § 55-7B-4(a) (using the term "*injury or death*" in stating the limitations period for a medical professional liability action against a health care provider other than a nursing home (emphasis added)); *Id.* at -4(b) (referring to "*injury or death*" when identifying the limitations period for a medical professional liability action against a nursing home or similar facility (emphasis added)); *Id.* § 55-7B-5(d) (permitting an MPLA action based on the prescription or dispensation of controlled substances only when certain facts are alleged

_____

[11] "Medical injury" was added as a term being defined along with "injury" in the 2022 amendments to the MPLA, thereby clarifying that "injury" is synonymous with "medical injury." W. Va. Code § 5-7B-2(h). Notably, the language of the definition was not changed. *See State Auto. Mut. Ins. Co. v. Youler*, 183 W. Va. 556, 569-70, 396 S.E.2d 737, 750-51 (1990) (clarification of Legislature's original intent permissible to inform pre-amendment application).

20

and proven by a preponderance of the evidence and when the prescription or dispensation "was a proximate cause of the *injury or death*" (emphasis added)); *Id.* § 55-7B-7a(c) (providing for a rebuttable presumption "that inadequate staffing or inadequate supervision was a contributing cause of the patient's fall and *injuries or death arising* therefrom," when certain criteria is met (emphasis added)); *Id.* § 55-7B-9b (acknowledging that the Act's limitations on third-party claims does not "prevent a derivative claim for loss of consortium arising from *injury or death* to the patient arising from the negligence of a health care provider within the meaning of this article" (emphasis added).

The Legislature's intent that the death or injury of a person is a required element of medical professional liability claims pursuant to the Act is further reflected in the limitations period for MPLA actions, which is phrased in terms of a "medical injury to a person." *See id.* § 55-7B-4(a) (addressing the limitations period for a "cause of action for *medical injury to a person* alleging medical professional liability against a health care provider" (emphasis added)); *Id.* at -4(b) (discussing the limitations period for a "cause of action for *medical injury to a person* alleging medical professional liability against a nursing home" or similar facility (emphasis added)). The MPLA does not provide or even reference a limitations period for a medical professional liability action that is based solely on economic damages, i.e., an action in which the plaintiff has disclaimed any personal injury, indicating that the Legislature has neither contemplated such an action nor required it to be filed in compliance with the MPLA.

21

Finally, the MPLA's mandatory prerequisites for filing a medical professional liability action include a screening certificate of merit, which

shall be executed under oath by a health care provider who:

(1) Is qualified as an expert under the West Virginia rules of evidence;

(2) Meets the requirements of § 55-7B-7(a)(5)[12] and § 55-7B-7(a)(6)[13] of this code; and

(3) Devoted, at the time of medical injury, 60 percent of his or her professional time annually to the active clinical practice in his or her medical field or specialty, or to teaching in his or her medical field or specialty in an accredited university.

W. Va. Code § 55-7B-6(b). The only circumstance in which the Act permits a medical professional liability action to proceed without a screening certificate of merit is where "the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care." *Id.* at

---

[12] West Virginia Code § 55-7B-7(a)(5) requires that

[a] proposed expert witness may only be found competent to testify if the foundation for his or her testimony is first laid establishing that: . . . (5) the expert witness maintains a current license to practice medicine with the appropriate licensing authority of any state of the United States: Provided, That the expert witness's license has not been revoked or suspended in the past year in any state;

[13] Pursuant to West Virginia Code § 55-7B-7(a)(6),

[a] proposed expert witness may only be found competent to testify if the foundation for his or her testimony is first laid establishing that: . . . (6) the expert witness is engaged or qualified in a medical field in which the practitioner has experience and/or training in diagnosing or treating injuries or conditions similar to those of the patient.

22

-6(c). This requirement for a screening certificate of merit, executed by a medical professional who possess certain medical expertise and experience in active clinical practice or teaching, has no rational purpose in the context of a medical professional liability action in which the plaintiff only claims an economic injury. To the extent that "[i]t is always presumed that the legislature will not enact a meaningless or useless statute," Syl. Pt. 4, *State ex rel. Hardesty v. Aracoma*, 147 W. Va. 645, 129 S.E.2d 921 (1963), we reject respondent's argument that the MPLA's applies to injuries that are purely economic.

With particular focus on the statutory definition of "medical professional liability" contained in West Virginia Code section 55-7B-2(i), and consistent with the legislative purpose for the MPLA as a whole, we now hold that the Medical Professional Liability Act does not apply to a suit against a health care provider or health care facility when the plaintiff claims only economic damages and disclaims all liability based on physical injury, emotional injury, or death. Hence, we answer the reformulated certified question in the negative.

## IV. Conclusion

For the foregoing reasons, we answer the reformulated certified question as follows: Does the Medical Professional Liability Act apply to a suit against a health care provider or health care facility when the plaintiff claims only economic damages and disclaims all liability based on physical injury, emotional injury, or death? Answer: No.

23

Reformulated Certified Question Answered.